Temple Hoyne BUELL, also known as
Temple H. Buell and T. H. Buell,
Plaintiff,

v.

SEARS, ROEBUCK AND CO., a New
York corporation, Defendant.

Civ. A. No. 7151.

United States District Court
D. Colorado.

June 5, 1962.

Akolt, Turnquist, Shepherd & Dick,
Laurence W. DeMuth, Jr., Denver, Colo.,
for plaintiff.

Rothgerber, Appel & Powers, Denver,
Colo., for defendant.

DOYLE, District Judge.

The action herein seeks to quiet title to a certain strip of real estate (a portion of a vacated street) which is described in the complaint as follows:

> That portion of Coloden Moor Subdivision, more particularly described as the vacated North 20 feet of First avenue, lying South of and adjoining Plot A ½, Block 69, Harmans Subdivision, and lying South of and adjoining the West ½ of the vacated alley adjacent to said Plot.

The defendant also claims ownership. Plaintiff's claim in general is based upon the fact that on August 19, 1948, he dedicated this vacated portion of street together with the remainder of the unvacated street as a part of Coloden Moor Subdivision. Defendant's contention of ownership is predicated upon the fact that it owns the property immediately adjacent to the vacated strip and extending along the north line of the said strip. Defendant argues that the dedication vested the fee title to the controverted area in the City and County of Denver and that upon its vacation it vested by operation of law, in defendant.

Defendant raises other points: *First*, that the defendant has been in possession of the property ever since it was vacated and that the plaintiff has made no claim of ownership until this case was filed; *secondly*, that the plaintiff has formally recognized and ratified defendant's ownership, and *thirdly*, that plaintiff actually intended to convey this property to the defendant at the time that he conveyed a similar strip (located west of the controversial area) to defendant.

The facts are virtually undisputed. In 1925 plaintiff acquired a fee title to the northerly 802 feet of the Southwest Quarter (SW-¼) of Section 12, T. 4 S., Range 68 West of the Sixth P. M., and on

August 19, 1948, (the date of the dedication) the strip in controversy constituted the extreme northerly boundary of the Southwest Quarter of Section Twelve. On August 19, 1948, this entire area was platted by plaintiff and the twenty-foot strip in controversy was part of First Avenue as platted and was within the Coloden Moor Subdivision. The plat was accepted by the City and County of Denver by Ordinance No. 160, Series of 1948. By Ordinance No. 89, Series of 1954, approved May 4, 1954, the City of Denver vacated the strip in question describing it as it is described above. The plaintiff continues to own the property immediately south of First Avenue. His property is immediately adjacent to the unvacated portion of First Avenue. The rough sketch set forth below illustrates positions of the vacated strip in relation to the property of the parties:

ILLUSTRATIVE DRAWING

It is undisputed that defendant took possession of the subject strip of land soon after it was vacated and used it as an employees' parking lot; furthermore, plaintiff was aware of this fact since his firm was the architect in charge of the development and his firm, at the request of defendant, designed the parking lot and specifically ordered it to be paved and graded. The paving order was dated September 7, 1954, and the cost to defendant was shown to have been $5,795.-00. Furthermore, an agreement (dealing with another subject) executed March 28, 1955, inferentially at least, recognized defendant's ownership of the disputed area. The extent of this recognition is questioned by plaintiff who argues that this agreement was not referring to the particular strip in question but was referring to a strip west of this one which had in fact been conveyed by plaintiff to defendant when defendant purchased the property west of Detroit Street from plaintiff. Furthermore, the legal consequence of this recognition is doubtful and it is mentioned only because it received some considerable emphasis at the

trial. The 1948 dedication is in pertinent part as follows:

"KNOW ALL MEN BY THESE PRESENTS that Temple Hoyne Buell * * * has subdivided (the described property) * * * under the name and style of Coloden Moor Subdivision, and by these presents does grant to the City and County of Denver for the perpetual use of the public, the right of way in, through, over and across the streets and avenue as shown on this map."

There are two significant Colorado statutory provisions: The primary one is that which deals with the estate which is granted to a city or town when streets are platted and dedicated. This is 139–1–7, C.R.S. 1953, and it provides:

"All avenues, streets, alleys, parks and other places designated or described as for public use on the map or plat of any city or town, or of any addition made to such city or town, shall be deemed to be public property, and the fee thereof be vested in such city or town."

The other significant provision sets forth the governing rules as to vesting of title upon vacation. Its provisions are as follows:

"120–1–12. Vesting of title upon vacation.—Whenever any roadway has been designated on the plat of any tract of land, or has been conveyed to or acquired by a county or incorporated town or city, or by the state or by any of its political subdivisions, for use as a roadway, and shall thereafter be vacated, title to the lands included within such roadway or so much thereof as may be vacated shall vest, subject to the same encumbrances, liens, limitations, restrictions and estates as the land to which it accrues, as follows:

"(1) In the event that a roadway which constitutes the exterior boundary of a subdivision or other tract of land is vacated, title to said roadway shall vest in the owners of the land abutting the vacated road-

way to the same extent that the land included within the roadway, at the time the roadway was acquired for public use, was a part of the subdivided land or was a part of the adjacent land.

"(2) In the event that less than the entire width of a roadway is vacated, title to the vacated portion shall vest in the owners of the land abutting such vacated portion.

"(3) In the event that a roadway bounded by straight lines is vacated, title to the vacated roadway shall vest in the owners of the abutting land, each abutting owner taking to the center of the roadway, except as provided in subsections (1) and (2) of this section. In the event that the boundary lines of abutting lands do not intersect said roadway at a right angle, the land included within such roadway shall vest as provided in subsection (4) of this section.

"(4) In all instances not specifically provided for, title to the vacated roadway shall vest in the owners of the abutting land, each abutting owner taking that portion of the vacated roadway to which his land, or any part thereof, is nearest in proximity.

"(5) No portion of a roadway upon vacation shall accrue to an abutting roadway."

Plaintiff's position is that the interest which the dedication granted to the City and County of Denver was, because of the special terms of the dedication, an easement only; thus, the plaintiff retained the fee and upon extinguishment of the easement by vacation, plaintiff's fee title again became absolute. Plaintiff further argues that under the common law the dedication and vacation of a street has the same result as the granting and release of a private easement; that the street "reverts" to the owner of the fee. He questions whether the Colorado statute on vacation applies, but contends that if it does apply the result is the

same as would be produced by common law vacation; that since he contributed all of the land including the vacated portion, title becomes fully vested in him.

Defendant's contention is that the dedication vested a fee title in the City and County of Denver and by doing so the plaintiff was divested of all interest in this particular property and that upon the vacation defendant as an owner of the land which immediately abuts the vacated part, was vested with a fee title by operation of law (that is, the statute, 120–1–12, supra).

Thus, the controversy is between one who is the owner of the property adjacent to the vacated highway on the north, and one whose property is not adjacent to the vacated strip at all—whose property is immediately adjacent to the unvacated highway. The facts present a unique problem. Normally, the problem arises where the lands on either side of the vacated highway have been conveyed by a common grantor. Here defendant acquired its adjacent land from a third person and thus its grantor made no original contribution to the highway. Here plaintiff contributed all of the land which became First Avenue but the vacated portion is adjacent (on the South) to the remainder of First Avenue so that plaintiff's problem is that he is not an abutting landowner. The underlying question is, therefore, whether the pertinent Colorado dedication and vacation statutes control this somewhat unique fact situation.

## I.

█ The first issue is whether the dedication vested a fee title in the City and County of Denver and divested the plaintiff of his interest in the surface of the strip of land in dispute.

The statute itself, Section 139–1–7 declares that the property so dedicated shall be deemed to be public property, and "the fee thereof be vested in such city or town." Thus, considering the terms of the statute alone there appears little, if any, doubt as to the legal consequence of a dedication.

In some of the Colorado cases the Court has been somewhat reluctant to call the term "fee" a fee, even though it has usually treated it as such. Thus, in Olin v. Denver & R. G. R. Co., 25 Colo. 177, 53 P. 454, the Court spoke of the platted tract being held in trust for the uses expressed therein (for the benefit of the public and adjoining owners), the Court nevertheless holding that abutting owner to whom lots were transferred with reference to a plat, took title to the center of the street. The Court said that as a result of the platting and dedication, the city held the land in trust for the general public and also for the use of the abutting lot owners. The Court went on to say that the proprietor, or dedicator, retained a right in such streets which was capable of being transferred by deed to the purchaser of abutting lots as rights appurtenant thereto, and further held that when a street was vacated the land embraced in it "reverted" to the adjoining owner, "the one for whose benefit such trust was created," and finally concluded that the dedicator-proprietor, once he made a conveyance of abutting land, retained no interest whatever in the land.

In Bothwell v. Denver Union Stockyard Co., 39 Colo. 221, 90 P. 1127, the plaintiff sought to recover as the grantee of the dedicator as against a defendant in possession, the grantee of the city, which had "abandoned" the land to defendant. In ruling for the defendant the Court said:

"* * * If, as claimed by appellant, the deed from the town to the appellee was simply a declaration of the abandonment of that portion of the streets in controversy, then as stated the title would pass, not to the original grantor, but to the abutting lots owners, in 1902. In view of the rules above stated, we think the appellant took nothing by his deed of October 22, 1901. It is not apparent by the pleading that the Denver Land & Improvement Company had any property in the said streets, or any portion of them,

which would pass by the deed to appellant. All its right, title, and interest had passed by the plat, which dedicated these streets to public use. It was held in Denver v. Clements, supra [Denver v. Clements, 3 Colo. 472], that dedication may be made in praesenti to be accepted by the public in futuro, and that, while before acceptance of the dedication the city was under no obligation to repair the streets, the dedicator was nevertheless bound by his acts."

The case of Denver & S. F. Ry. Co. v. Hannegan et al., 43 Colo. 122, 95 P. 343, 16 L.R.A.,N.S., 874, considers the issue of the nature of the property interest of the city somewhat more specifically. In that case, an abutting owner sought to recover damages based upon the fact that the defendant railroad company had no right to use a street abutting the plaintiff's property. The city had authorized this occupancy for railway purposes and the question was whether the city had such title to enable it to make the grant to the railroad company. The Court held that the city could authorize the occupancy and use for railway purposes although it was recognized that this was not strictly an ordinary use of a public street.

Skeritt Inv. Co. v. City of Englewood et al., 79 Colo. 645, 248 P. 6, considered whether the original dedicator retained any reversionary interest in the street after conveying to an abutting owner, notwithstanding that the dedicator reserved in the deed the right to the street should the same ever become vacated. The Court held that:

"This language does not overcome the presumption that the grantee, Beitenman, took title to the center of the vacated street. Why this recital was inserted, we do not know; possibly it was because the grantors imagined that as their ancestor was the original owner of the lands on both sides of Hampden Avenue at the time it was laid out, they, as such heirs, would get title to the highway, if it was vacated, even though they had parted with title to the land adjoining the highway. But their supposition is not controlling. The language is not a reservation or an exception. The recital seems to be repugnant to the previous language of an express unrestricted grant. If so, it is void. We think it amounts to a mere naked option and imposes no obligation whatever upon the grantee, Beitenman, to whom the option was given. It gives to him, upon an uncertain contingency, merely an option to buy something which the plaintiff does not own. He may entirely disregard it, and if he does, no action lies for his failure to take it up. But more important is the fact that the Skeritt heirs had no title to lot 50 which they could convey, and we have already said that it could not have been their intention to include lot 50 in their deed to the plaintiff corporation because they had previously dedicated the same to the county as a part of Hampden avenue. When this avenue was vacated, lot 50 being a part thereof, it vested in the proprietor of the abutting premises; such abutting owner taking to the center of the street. Section 9073, C.L.1921; Olin v. D. & R. G. Ry. Co., 25 Colo. 177, 53 P. 454."

The case which plaintiff emphasizes is that of City of Leadville v. Bohn Mining Co. et al., 37 Colo. 248, 86 P. 1038, 8 L.R.A.,N.S., 422. This was decided with reference to a statute which is almost exactly the same as Section 139-1-7. There the City of Leadville sought to prevent the mining of ore at a depth of four hundred to five hundred feet beneath the surface of a dedicated street. The action was against a company which occupied the same legal position as the dedicator. The Court held that although the statute used the term "fee," it was not the intention of the legislature to give to the city proprietary rights and interest in the dedicated land so as to convey to the city

the mineral interest beneath the earth. In describing the interest of the City of Leadville, the Court said that it was the purpose of the statute to clothe the city with the entire title to the streets as such "for public use and not for the 'profit or emolument of the city.'" The Court continued:

"It was plainly the intention of the dedicator to part with the title to so much of its property only as was necessary to effectuate the purpose of establishing certain streets and alleys designated and described upon the plat for public use, and to clothe the city with the absolute title thereto for that purpose only, and not to vest it with any estate or interest in the ores that may exist thereunder. The cases cited by counsel for appellant are based upon statutes that expressly provide that a statutory dedication shall vest the fee to the 'land,' 'ground,' or 'premises' donated for streets or other public uses in the municipality, and therefore are not applicable to a dedication under our statute which, as we have seen, vests the fee in the 'streets' as such."

The Leadville case, while upholding the dedicator's right to claim the minerals beneath the street, nevertheless holds that the dedication vests the entire interest in the surface of the streets in the city and thus divests the dedicator of any such interest. The issue of disposition upon vacation or partial vacation was not there present.

It is noteworthy also that in the case immediately preceding Leadville v. Bohn, that of City of Leadville v. Coronado Mining Co. et al., 37 Colo. 234, 86 P. 1034, the Court, speaking through the same Justice who wrote the Bohn case held that the dedication was there a common law dedication and that therefore the City of Leadville had no semblance of right to object to the subsurface mining since its interest was limited to an easement for street purposes.

Although the Colorado cases have taken the position that the fee referred to in the statute granted by the dedicator of land for highway or street purposes is a limited fee, it does not appear from a careful reading of any of these decisions that the limitation operates to the benefit of the plaintiff here. It is fair to conclude that the fee title, to the surface at least, of the dedicated street passes to the city or the municipality. The dedicator (so long as he retains the abutting land), or his grantee, owns the remaining interest in the street, including a right to an absolute fee to the center of the street or highway upon vacation by the city. It cannot be said from a reading of any of the cited cases that merely because he has granted the entire highway and continues to own the land which abuts the highway on one side, that he has a right to the whole or any part of the highway when it is vacated. There is nothing in the statute, or in any of the cases cited which suggests that the interest granted to the city is limited to an easement and it would be necessary to hold that the city had such an interest in order to give effect to plaintiff's assertion of right.

One early decision, City of Denver v. Clements, 3 Colo. 472, distinguishes between a common law and statutory dedication and holds that a statutory dedication vests the fee in the City. The Court there declared:

"It is held in the earlier cases in the State of New York, that even where there has been a dedication of streets to public use, a condemnation is necessary, and that the dedicator, even after the sale of lots abutting on the streets, is entitled to *nominal* damages, as a compensation for the fee of the streets in the front of such lots, which under the laws of that State vests in the city for the uses declared. Wyman v. Mayor of New York, 11 Wend. 486; Livingston v. Mayor of New York, 8 Wend. 85.

"The doctrine of these cases, so far only as relates to the dedicator being entitled to any compensation under the circumstances, is re-

pudiated by the court of appeals in Bissell v. New York Central R. R. Co., 23 N.Y. 61, 66, on the ground that with the sale of lots the fee of the street to the center thereof in front of the lots sold, passed to the vendee. But where the lots fronting on a street dedicated to the public use have not been sold by the proprietor, the fee of such street to the center in front of the unsold lots remains in him, charged with a public easement; and if upon condemnation the fee under the statute passed to the city, the proprietor would be entitled to nominal damages.

"Where a statutory plat has been filed, the fee of the streets, as we have seen, vests under the law in the city. But as when the dedication is not statutory no such result follows, there is nothing for which the lot-owner is to be compensated. The fee does not vest in the city. The corporate authorities by their acceptance assert jurisdiction over a street dedicated to public use, and assume obligations in respect thereto, without divesting the fee from the owner of the abutting lots."

Counsel for plaintiff has cited cases which hold that the dedicator retains an interest in a dedicated street—a fee title capable of being conveyed to an abutting owner or a possibility of reverter upon vacation, but these are cases in which the dedication was a common law rather than a statutory dedication. These are discussed in 70 A.L.R. 567, a note to Neil v. Independent Realty Co., 317 Mo. 1235, 298 S.W. 363, 70 A.L.R. 550, and the author evaluates these decisions as turning on the provisions of the dedication and vacation statutes. Thus, in the Neil case, wherein the entire street was vacated, the Missouri Court ruled that inasmuch as an easement only was granted at the time of the dedication, the vacation was merely an abandonment of the easement resulting in restoration of present enjoyment of the fee to the dedicator. This Neil case is similar to the instant one in that one edge of the street was a section line and there, as in the instant case, originally the dedicator owned the land on one side of the highway only. It is, however, substantially different from the case at bar in that here the vacation was a partial one only which would create a disjointed tract; in Neil the whole street was vacated allowing all of the vacated area to go to the dedicator-abutting owner, and there was no applicable statute in Missouri vesting a "fee" in the city. The Missouri Court noted that the city acquired by the dedication a mere easement but also observed that a statute could change the result:

"Statutory provisions as to the dedication may materially affect the common-law rule. Under a common-law dedication, the public acquired a mere easement. By such dedication the public had the use of the surface for a highway and so much below the surface as was necessary for a complete enjoyment of the easement. The fee to the highway (in the full sense of the term 'fee') was not vested in the public."

From an analysis of the decisions of the Colorado Supreme Court it can not be said that a dedication pursuant to statute results in granting a mere easement to the city. The fee granted is, to be sure, a limited one—in trust for the abutting owners and the users of the street, but the city nevertheless has a title to the property sufficient to allow disposition of it in accordance with the vacation statutes. By the dedication the original owner divests himself of the power of disposition of the property and vests the city with this legal power.

## II.

Turning now to the particular terms of the dedication, it is to be noted that this dedication was not prepared and designed by plaintiff so as to purposely confer a limited estate. The Secretary of the Planning Division of the City of Denver testified that the wording employed in this dedication was furnished by the City and County of Denver, having been prepared by the City Attorney, and that it was the usual form of dedication and one which the city required.

Plaintiff emphasizes that the dedication uses the term "right of way in, through, over and across the streets," and the term "for the perpetual use of the public." These terms, according to plaintiff, result in the transfer of a mere easement, irrespective of the terms of the statute. Unless, however, the dedication is common-law rather than statutory, this argument is not tenable because Section 139–1–7 requires no magic words. It declares that all avenues, streets, etc., described as for public use on the map or plat of any city, or any additions, shall be deemed to be public property and the fee thereof vested in such city or town. In thus providing, the statute declares that the legal consequence of a dedication is that the streets, etc., are deemed to be public property and the fee is vested in the city. The only statutory requirement is that the streets be described as for public use. The words used in the instant dedication adequately describe the street in question as for public use. The statute does the rest. The dedication created here must, therefore, be held to have satisfied the statute and to have vested a fee in the city to the surface and so much thereof as was reasonably necessary for street and highway purposes. In so doing it operated to divest the dedicator (plaintiff herein), of the property in it except to the extent of his rights as an abutting owner—rights extending only to the center of the street as dedicated.

No reason other than the particular wording of the dedication in question is offered by plaintiff to support his contention that it arose under the common law rather than the statutes. It does not appear that there was any failure to comply with the statute or that there was non-acceptance. In the absence of any such showing it must be concluded that it was a statutory dedication, the terms of which were and are governed by Section 139–1–7, supra.

### III.

Having concluded that prior to vacation the City of Denver had a fee pursuant to Section 139–1–7, supra, it re-

mains to determine which of the subsections of 120–1–12 (C.R.S.1953) operated to dispose of the vacated area. Plaintiff's claim that Subsection (1) applies proceeds from the fact that plaintiff contributed all of the land and the north boundary of the vacated strip is also the section line. This section provides:

"(1) In the event that a roadway which constitutes the exterior boundary of a subdivision or other tract of land is vacated, title to said roadway shall vest in the owners of the land abutting the vacated roadway to the same extent that the land included within the roadway, at the time the roadway was acquired for public use, was a part of the subdivided land or was a part of the adjacent land."

If the whole of First Avenue was being vacated, there would be merit in this argument. The above section clearly contemplates the vacation of the entire roadway. In such event plaintiff's land would be abutting the vacated area on the south side. This is not, however, the case. The vacated strip abuts unvacated First Avenue on the south. The facts here do satisfy one part of Subsection (1) above in that it constitutes the boundary of a subdivision, but this is not enough. Subsection (1) contemplates that the vacated strip shall attach to abutting land and the strip in question abuts the highway, First Avenue (unvacated) on its northern edge.

It is more logical to hold that Subsection (2) applies. That provides:

"(2) In the event that less than the entire width of a roadway is vacated, title to the vacated portion shall vest in the owners of the land abutting such vacated portion."

The above-quoted subsection was designed to cover the vacation of less than the entire width of a highway, that which we have here. On the one side of the strip in issue is the unvacated highway and on the other side is the land of the defendant. If this subsection applies, the strip vests in the defendant. That it

does apply is clear from a consideration of Subsection (5) which reads:

"(5) No portion of a roadway upon vacation shall accrue to an abutting roadway."

The Colorado General Assembly here expressed a clear intent to exclude an unvacated highway as an abutting owner, and when this section is read with and compared to Subsection (2), it is clear that the latter is applicable and that Subsection (1) does not apply.

If any doubt remains as to the effect of Section 120–1–12, it is dispelled by referring to Subsection (4) which declares:

"(4) In all instances not specifically provided for, title to the vacated roadway shall vest in the owners of the abutting land, each abutting owner taking that portion of the vacated roadway to which his land, or any part thereof, is nearest in proximity."

The above would appear to carry out the policy of the Colorado General Assembly to prevent the creation of any disjointed tracts. In all situations the vacated roadway vests in the owners of abutting land. Indeed, this is true of Subsection (1) on which plaintiff relies and the nonapplicability of this subsection is all the more clear from a study of the quoted provisions.

Plaintiff has one more alternative point which is mentioned but is not argued: He points out that this statute was not in effect at the time that the highway in question was vacated; however, the statute which was in force at that time does not change the result because that provision simply stated that upon vacation of the highway "the fee of the lands included within such street or alley, * * shall be deemed and taken to vest in the proprietors of the abutting lots, and parts of lots, each abutting owner taking to the center of the street or alley or to the extent that the street or alley may be vacated." (Section 116, Ch. 163, C.S.A. 1935).

The conclusion is, therefore, that the vacation statute, whether that of 1949 or the one which was in effect prior thereto, operated to vest the title to the strip in question in the defendant.

## IV.

The final question then, is whether an adjudication holding that the embattled strip of land has become vested in the defendant is unconstitutional as to plaintiff. This point was raised in oral arguments; however, no authority has been submitted which so holds, and the alleged unconstitutionality is certainly not palpable. The plaintiff voluntarily dedicated the area in question and in so doing he subjected himself and his property to the operation of the laws of the State of Colorado. These laws operated to divest the plaintiff of his property in the streets and highways which were dedicated and thus the vacation statute is not bringing about this effect. This question was fully considered in the case of Prall v. Burckhartt, 299 Ill. 19, 132 N.E. 280, 18 A.L.R. 992. The Illinois Court held that one dedicating highways to the public by filing plats showing highways located thereon is not unconstitutionally deprived of its property by a statute which provides that upon vacation of the highway the title shall vest in the abutting owner. The Illinois Court reasoned that by the dedication, the dedicator parts with all of his property. See also the comments on this case in 18 A.L.R. 1008.

Having concluded that the strip of ground in issue was vested in defendant upon its being vacated by the City and County of Denver, it follows that defendant is entitled to judgment herein. It is, therefore, directed that judgment be entered in favor of the defendant and against the plaintiff upon its second counterclaim and that defendant be adjudged to be the owner in fee simple of the property described in the first paragraph of the complaint and at the outset of this opinion.

Formal findings are dispensed with, but defendant is directed to submit an appropriate judgment to the Court for signature.