No. 21130.

TEMPLE HOYNE BUELL, ALSO KNOWN AS TEMPLE H. BUELL
AND T. H. BUELL *v.* REDDING MILLER, INC., A COLORADO
CORPORATION, ET AL.
(430 P.2d 471)

Decided July 17, 1967.    Rehearing denied August 28, 1967.

AKOLT, SHEPHERD & DICK, LAURENCE W. DEMUTH, JR.,
PAULINE J. NELSON, for plaintiff in error.

JOSEPH MCDONALD, ROTHGERBER, APPEL & POWERS, FAIR-
FIELD and WOODS, ISAACSON, ROSENBAUM, GOLDBERG &
MILLER, CREAMER and CREAMER, WILLIAM LIVINGSTON,
EDWARD MILLER, WESLEY A. MILLER, WARREN KENT
ROBINSON, IRELAND, STAPLETON, PRYOR & HOLMES, ROBERT
C. HAWLEY, WILLIAM N. ARMSTRONG, for defendants in
error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

WE refer to plaintiff in error as plaintiff or as Buell, and to defendants in error as defendants or by their respective names.

In 1925 Buell acquired title to land in the northerly portion of the SW ¼ of Section 12, Twp. 4, South, Range 68 West of the 6th P.M. in the City and County of Denver. The north boundary of that property is the eastwest centerline of section 12. Defendants are the owners of property which lies within the NW ¼ of the same Section 12, and abuts on the north the property acquired by Buell in 1925.

On August 19, 1948, Buell subdivided his above described land (together with his other lands) and filed a plat thereof designating the same as Coloden Moor Subdivision. This plat contained the usual designation of streets and thoroughfares for use of the public. Among these was a strip of ground 110 feet wide extending along the northern boundary of the Buell property, which was designated "First Avenue." The northern boundary of this "First Avenue" was the east-west centerline of Section 12, which, as above indicated, separated the Buell property from that owned by the defendants or their predecessors in interest. Pursuant to the dedication to public use of the streets, as indicated by the plat, Buell, "* * * by these presents does grant to the City and County of Denver for the perpetual use of the public the right of way in, through, and across the streets and avenues as shown on this map." The dedication as made by Buell was duly approved by the City and County of Denver by ordinance adopted in November, 1948. Since that time there has been a remarkable business development in the general area of the property above mentioned. On either side of "First Avenue" as originally dedicated by Buell, numerous

stores, shops and business establishments have grown up and are carrying on their respective activities.

It is admitted that the north 20 feet of "First Avenue" as dedicated by Buell has been vacated by proper action of authorized officials, leaving only a strip of land 90 feet in width as the thoroughfare known as "First Avenue" which is used by the public. On July 15, 1960, plaintiff Buell filed his complaint in the district court of the City and County of Denver alleging that he was the owner of the 20 foot strip of land originally included in the 110 foot wide area dedicated by him as "First Avenue," which had been vacated as a part of the street. He alleged that all of the numerous named defendants claimed some right, title, or interest in and to the 20 foot strip of real estate, but that the claims of defendants were without foundation or right. He prayed generally for a decree quieting title in the plaintiff. Each of the defendants answered the complaint, denied the title alleged by plaintiff, and demanded dismissal of the complaint. Some of them filed counterclaims to quiet title in themselves in and to their respective portions of the 20 foot strip.

Trial was to the court which found generally against the plaintiff; that the claims of the plaintiff were without merit; and that plaintiff has no title in or to the property which is the subject matter of the action. The trial court further found that when the City and County of Denver "vacated" the 20-foot strip, title thereto was vested in the owners of the land abutting that portion of "First Avenue" thus vacated. The trial court adjudicated in detail the respective rights of each of the defendants in their respective portions of the whole 20 foot strip which plaintiff had claimed, and reserved the rights of damages as claimed by those defendants for future determination. Those findings and orders were entered on October 18, 1963. Subsequently thereto the court in various separate orders entered final judgments on the respective counterclaims.

Plaintiff in seeking reversal by this writ of error contends that:

"I. The plaintiff granted only a right of way to the city of Denver; he is still the owner of the fee simple title to the land.

"II. The fee simple title to the land remained in Buell and was not divested by the Colorado Dedication Statute.

"III. The vacation statute did not divert Buell's fee simple title to the land; he remained the owner of the land after vacation.

"IV. There is no merit to defendants' claims of laches and estoppel."

As to the plaintiff's fourth point for reversal, it is sufficient to say that the trial court found it unnecessary to decide the questions of laches and estoppel, and in view of our conclusions herein we also find it unnecessary to touch upon those questions.

C.R.S. 1963, 139-1-7, provides:

"All avenues, streets, alleys, parks and other places designated or described as for public use on the map or plat of any city or town, or of any addition made to such city or town, shall be deemed to be public property, and the fee thereof be vested in such city or town."

Legislation similar to the above-quoted statute is common throughout the United States and has given rise to much litigation; decisions pertaining to it are by no means uniform. There are cases in other jurisdictions in which the courts have said in effect that similar statutes do not mean what they say.

*The City of Leadville v. The Bohn Mining Company,* 37 Co'o. 248, 86 P. 1038, is relied on by counsel for Buell. In that case it was held that a city, under a dedication of this kind, acquires such estate or interest as is reasonably necessary to enable it to utilize the surface and as much of the ground underneath as might be required for laying gas pipes, building sewers, and other municipal purposes, but acquires no interest in the ores that may exist thereunder. It is contended that this case has

aligned Colorado with those jurisdictions which hold that the statute does not mean what it says. It is argued that if the city does not have the right to ores existing underneath the area dedicated to public use, then the city is not the owner of a full fee title.

It is to be noted that C.R.S. 1963, 139-1-7, *supra*, applies only to cities and towns and does not apply to county or state highways. Hence, we make no mention of the cases involving county or state highways or those which involve common law dedications where rights-of-way have been acquired by long or adverse user by the public. This court, throughout all the litigation relative to and concerning C.R.S. 1963, 139-1-7, has been very consistent in its holding that where a landowner makes a statutory dedication of portions of his property to a city or town for use of the public as streets, avenues, or alleys, he has no rights left in the dedicated premises to convey to anyone. *Skerritt Investment Co. v. City of Englewood*, 79 Colo. 645, 248 P. 6; *The Denver and Santa Fe Railway Co., v. Hannegan*, 43 Colo. 122, 95 P. 343; *Bothwell v. Denver Union Stockyards Company*, 39 Colo. 221, 90 P. 1127; *Olin v. The Denver and Rio Grande Railroad Co.*, 25 Colo. 177, 53 P. 454.

In *Leadville v. Bohn, supra*, there was no issue presented relating to the ownership of property upon vacation or partial vacation of the dedication to public use. We are not required herein to determine what rights the City and County of Denver acquired from Buell by reason of his dedication. Buell as plaintiff in an action to quiet title must show title in himself. This he failed to do.

C.R.S. 1963, 120-14-2 provides:
"VESTING OF TITLE UPON VACATION. (1) (a) Whenever any roadway has been designated on the plat of any tract of land, or has been conveyed to or acquired by a county or incorporated town or city, or by the state or by any of its political subdivisions, for use as a roadway, and shall thereafter be vacated, title

to the lands included within such roadway or so much thereof as may be vacated shall vest, subject to the same encumbrances, liens, limitations, restrictions and estates as the land to which it accrues, as follows:

"(b) In the event that a roadway which constitutes the exterior boundary of a subdivision or other tract of land is vacated, title to said roadway shall vest in the owners of the land abutting the vacated roadway to the same extent that the land included within the roadway, at the time the roadway was acquired for public use, was a part of the subdivided land or was a part of the adjacent land.

"(c) In the event that less than the entire width of a roadway is vacated, title to the vacated portion shall vest in the owners of the land abutting such vacated portion.

"(d) In the event that a roadway bounded by straight lines is vacated, title to the vacated roadway shall vest in the owners of the abutting land, each abutting owner taking to the center of the roadway, except as provided in subsections (1)(b) and (1)(c) of this section. In the event that the boundary lines of abutting lands do not intersect said roadway at a right angle, the land included within such roadway shall vest as provided in subsection (1)(e) of this section.

"(e) In all instances not specifically provided for, title to the vacated roadway shall vest in the owners of the abutting land, each abutting owner taking that portion of the vacated roadway to which his land, or any part thereof, is nearest in proximity.

"(f) No portion of a roadway upon vacation shall accrue to an abutting roadway."

Under (c) of the above statute and by reason of the vacation of the north 20 feet of "First Avenue," title to the vacated portion passes to the abutting owners thereto in ratio to their respective front footage.

Prior to the trial of the instant case, plaintiff also filed another action against Sears Roebuck and Company.

That case was removed to the Federal District Court for the District of Colorado. It involved facts identical to those disclosed by the record in the instant case although a different section of the 20 foot strip was involved. The opinion of the court in that case held against the plaintiff and for the defendant. *Buell v. Sears, Roebuck and Co.,* 205 F. Supp. 865. That judgment was affirmed by the United States Court of Appeals, Tenth Circuit, in *Buell v. Sears, Roebuck and Co.,* 321 F.2d 468.

In deciding the instant case the trial court relied heavily upon the opinions in the above federal case. While this court is not bound by the decisions of the federal courts in matters of this kind, they have persuasive effect.

The judgment of the trial court is affirmed.