**TOWN OF MOORCROFT, Wyoming, Appellant (Defendant),**

**Lincoln Land Company, a former Nebraska corporation (dissolved August 5, 1974), and any and all successors in interest, heirs, executors, administrators, trustees and assigns thereof, (Defendants),**

v.

**Gladys D. LANG, Robert H. Hays, and Evelyn J. Hinz, Appellees (Plaintiffs).**

**LINCOLN LAND COMPANY, a former Nebraska corporation (dissolved August 5, 1974), and any and all successors in interest, heirs, executors, administrators, trustees and assigns thereof, Appellants (Defendants),**

**Town of Moorcroft, Wyoming, (Defendant),**

v.

**Gladys D. LANG, Robert H. Hays, and Evelyn H. Hinz, Appellees (Plaintiffs).**

Nos. 87–182, 87–183.

Supreme Court of Wyoming.

Sept. 25, 1989.

Cecil A. Cundy, Sundance, and Harlan A. Schmidt, Spearfish, South Dakota, for appellant Lincoln Land Co.

Mark L. Hughes of Hughes & Dumbrill, Sundance, for appellant Town of Moorcroft.

Dan R. Price, II of Morgan, Price & Arp, Gillette, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, GOLDEN, JJ., and KALOKATHIS, District Judge.

KALOKATHIS, District Judge.

This case came before the Court upon a petition for rehearing filed on September 22, 1988. The opinion of the court was issued in *Town of Moorcroft v. Lang*, 761 P.2d 96 (Wyo.1988). The facts were set out in that opinion, thus it is unnecessary to repeat them in detail here. The decision held that the mineral rights underlying the streets and alleys in the Town of Moorcroft remained in the original dedicator.

Upon rehearing, the parties addressed the following issue:

Was the mineral estate underlying the dedicated property transferred to the adjoining lot owners or did it remain with the developer?

We conclude that the mineral estate remained with the developer.

The resolution of this dispute requires us to decide whether the presumed intent rule should be applied to a case involving statutory dedication.[1]

■ The presumed intent rule is a well-established principle of property law. It holds that a conveyance by a developer of a subdivision lot includes fee title to not only the lot described, but also to the middle of the street upon which that lot abuts. The conveyance includes the mineral estate beneath the lot unless it is specifically reserved by the grantor. 11 C.J.S. *Boundaries* § 35 (1938); *see also* Annotation, *Boundary—Title to Center of Highway*, 49 A.L.R.2d 982 (1956).

The reason for the rule is explained in *MacCorkle v. City of Charleston*, 105 W.Va. 395, 142 S.E. 841, 843, 58 A.L.R. 231 (1928):

"The seller of land can ordinarily have no object in retaining a narrow strip along a line of his grant, * * *. The strip is of no value when separated from the adjoining property. * * * The retention of the strip may seriously retard the improvement and further alienation of the adjoining property, * * *."

Another reason advanced is the notion that the law looks with disfavor upon piecemeal ownership of small strips of land.

The presumed intent rule finds wide acceptance in those instances in which the dedication creates an easement in the public. However, in those instances in which

---

1. W.S. 34–12–104 provides: "Same; effect of acknowledgment and recording. The acknowledgment and recording of such plat, is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets, or other public use, or is thereon dedicated to charitable, religious or educational purposes."

the dedication creates a fee, in so far as we have been able to determine, the presumed intent rule has not been applied.[2]

*Lambach v. Town of Mason*, 386 Ill. 41, 53 N.E.2d 601, 604 (1944), discusses the distinction between a common law and statutory dedication in the light of the presumed intent rule:

"If it is a common-law plat, then the municipality only acquired an easement and right to use the streets. The fee is in the adjoining lot owners, and passed to subsequent grantees with the conveyance of the lots. * * * It is also true that where the fee to the streets, and not merely an easement, is vested in the municipality, it owns the minerals under the surface of the streets and lessees of the owners of the abutting lots have no right to take such minerals."

We have determined that statutory dedication in Wyoming vests a public authority with a fee simple determinable to only the surface estate and a limited portion below ground sufficient to accommodate the various public utilities. *City of Evanston v. Robinson*, 702 P.2d 1283 (Wyo.1985).

This leads to the issue in the present case where the original dedicator and abutting lot owners both claim the mineral estate under the street. The developer, Lincoln Land Company, argues that the presumed intent rule should not apply to vest in the abutting lot owners the mineral estate lying below the streets. Rather, it urges us to apply a first principle of conveyancing, i.e., that the grantee obtains title only to that estate specifically described in the deed and nothing more.

Before discussing any policy considerations, which the parties ably presented, we take time to analyze the various interests in the land at issue. It is important to explain what happens to these various interests, not only upon dedication, but also upon conveyance of an abutting lot and finally upon vacation of the street.

Most developments involve a parcel of property, owned exclusively by a developer/grantor. Unless the mineral estate has been previously reserved, the developer owns the entire estate in fee simple absolute.

The process of subdividing lots and defining the streets may be accomplished either by statutory dedication or by common law dedication:

"A statutory dedication is one pursuant to the terms of the statute, and is almost universally created by the filing and recording of a plat. A common-law dedication requires an intention to dedicate expressed in some form, and an acceptance of the dedication by the proper public authorities, or by general public user. It is distinguishable from a statutory dedication, which is in the nature of a grant, and from prescription which is based on a long period of use. Generally a common-law dedication rests upon the doctrine of estoppel. Statutory dedication generally vests the legal title to the grounds set apart for public purposes in the municipal corporation, while the common-law method leaves the legal title in the original owner." 11 McQuillin, *Municipal Corporations* § 33.03, p. 640 (3rd Ed.1983).

### Common Law Dedication

■ A common law dedication does not affect the title to the fee. The developer continues to hold in fee title to the streets and also to the abutting lots. The dedication, however, creates a surface easement, specifically an easement appurtenant, for the benefit of the public to use as a street for public purposes. 2 Thompson, *Commentaries on the Modern Law of Real Property*, § 321 (1980 Replacement). When the developer sells an abutting lot,

---

2. For example, see *Moeur v. City of Tempe*, 3 Ariz.App. 196, 412 P.2d 878, 881 (1966), "where, as here, the filing of such plat vests the fee in the municipality, a purchaser of a particular lot acquires no interest in the streets." *Bradford v. Smith*, 177 Kan. 120, 276 P.2d 366, 367 (1954), where the effect of filing a plat and dedication vests the fee to the streets and alleys in the public, "a purchaser of a particular lot obtains no interest in the street, in front or the alley in the rear of his lot." *See also, Belgum v. City of Kimball*, 163 Neb. 774, 81 N.W.2d 205, 212–213, 62 A.L.R.2d 1295 (1957).

the common law presumes that he intended to convey not only the lot specifically described in the deed, but also to the middle of the adjoining street. This rule applies even though the deed described nothing more than a particular lot. Versions of this rule have been recognized by this court and we do not intend to modify that rule. See *Coumas v. Transcontinental Garage*, 68 Wyo. 99, 230 P.2d 748, 41 A.L.R.2d 539 (1951).

In common law dedication cases, the presumed intent rule operates to pass title to the middle of the adjoining street and in proper cases, to the entire street. Title thus passed includes the entire fee absent a reservation of the mineral estate. This result can be explained by the fact that an easement appurtenant cannot be created without a servient estate to which the obligation rests and a dominant estate to which the right belongs. It is necessary for unity of title to be in the same person. 2 Thompson, *supra*, § 323.

An easement appurtenant cannot exist separate from the land to which it is annexed. It cannot be conveyed by the party entitled to it separate from the land to which it is appurtenant. 2 Thompson, *supra*, § 322.

Since the survival of an easement depends upon the existence of a servient estate, the result obtained through application of the presumed intent rule assures the fulfillment of that requirement.

### Statutory Dedication

Rather than resulting in an easement to the public in the platted area designated for streets, statutory dedication creates a fee. The act of dedication produces three separate interests. The first is an estate in fee simple determinable in the surface estate conveyed to the public authority. A fee simple determinable is less than absolute. The transferor retains a possibility of reverter. *Williams v. Watt*, 668 P.2d 620, 629 (Wyo.1983). This possibility of reverter comprises the second interest generated. The third interest is a mineral estate in fee lying below the street, and created by horizontal severance upon dedication.

Since the dedication does not pass the minerals to the public authority, the dedicator continues to hold the mineral estate. *City of Leadville v. Bohn Mining Co.*, 37 Colo. 248, 86 P. 1038, 1040 (1906), recognized that

"It was plainly the intention of the dedicator to part with the title to so much of its property only as was necessary to effectuate the purpose of establishing certain streets and alleys designated and described upon the plat for public use, and to clothe the city with the absolute title thereto for that purpose only, and not to vest it with any estate or interest in the ores that may exist thereunder."

The dedicator also holds the possibility of reverter to the surface estate and should the street be vacated before any lots are sold, the fee simple determinable would revert to the dedicator. W.S. 34–12–104, *supra*. This result occurs if no abutting lots are sold.

If a sale occurs, then a different set of rules apply if the street is vacated. The decision to vacate belongs to the abutting lot owners. W.S. 34–12–106. Upon vacation, the fee to the surface estate in the street then vests in such lot owners. W.S. 34–12–109. Even though the legislation dictates this result, it does not explain whether the possibility of reverter was transferred along with the abutting lot, or whether the possibility of reverter simply vanished. *Lambach v. Town of Mason*, *supra*, 53 N.E.2d at 604, provides an explanation:

"Neither the possibility of reverter in the abutting lot owners, nor the title to the center of the street is an ownership separate from the ownership of the lots. It may not be detached and conveyed or leased as an interest or estate separate and distinct from the lots. It passes by operation of law to any subsequent owner of the lots." (citations omitted)

It follows from the foregoing that the possibility of reverter passed by virtue of the deed describing the abutting lots,

even though it was not specifically mentioned in the deed.

We are left to decide whether the mineral estate below the street also passed to the abutting lot owners even though the deed conveying the lot made no reference to that estate.[3]

It has been suggested that the abutting lot owners should be treated the same regardless of whether the development exists by virtue of common law or statutory dedication. It has also been urged that the law does not look with favor upon piecemeal ownership of land. Accordingly, we are urged to remove the developer from the picture and hold that the abutting lot owners own the minerals underlying the streets. Merely to arrive at a desired result is not in and of itself sufficient reason to decide an issue in a particular way. On the other hand, unless there is a conceptual obstacle, the fact that a result is desirable may be reason enough. These are the factors we must consider in deciding whether to extend the presumed intent rule to the mineral estate created by statutory dedication.[4]

■ Unlike common law dedication, in which no severance occurs, a statutory dedication involves a severance of the surface and mineral estates of the street area upon

dedication. This severance occurs by virtue of the dedication statutes creating the "equivalent to a deed in fee simple to such portion of the premises platted as is on such plat set apart for streets." W.S. 34–12–104, *supra*. *See also, City of Evanston v. Robinson, supra*.

After severance, the mineral estate enjoys an existence separate and apart from the surface estate. The severance creates two separate estates both of which are mutually dominant and servient. Each is a freehold estate separate and independent of the other. *Ohio Oil Co. v. Wyoming Agency*, 63 Wyo. 187, 179 P.2d 773, 778 (1947).

■ The fee created by statutory dedication becomes the street.[5] This is unlike the case of a street easement created by common law dedication. The street created by statutory dedication does not need a servient estate. Moreover, a street created by statutory dedication is not subject to the requirement of unity of title to both servient and dominant estates. The abutting lot is severed from the adjoining street as a separate fee estate. Unlike the case of a street created by easement, there are no concepts such as the unity of title requirement which necessitate the application of the presumed intent rule to a statutory

---

3. Much has been made of *Prall v. Burckhartt*, 299 Ill. 19, 132 N.E. 280, 18 A.L.R. 992 (1921). That case did not involve the application of the presumed intent rule. Prall, the dedicator, brought an action of ejectment against Burckhartt and Carrithers to recover possession of streets and alleys in a subdivision which he had platted. Unlike the case at hand, the streets and alleys had been vacated. The court simply applied the Illinois vacation statute which vested title to the abutting lot owners upon vacation. The court recognized that the dedication reserved to the grantor the possibility of reverter to the estate so dedicated. It was asked to determine whether the vacation statute which vested the dedicated estate in the abutting lot owners deprived the dedicator of a property right without due process. The court determined that the possibility of reverter, being a bare expectancy was not entitled to such protection. Moreover, the entire estate both surface and minerals were deemed to comprise the subject matter of the dedicated property and pass to the public authority. In Wyoming, only the surface estate becomes the subject of dedication, the minerals remain with the dedicator.

4. It has been suggested that our holding here requires that we reverse *Payne v. City of Laramie*, 398 P.2d 557 (Wyo.1965). That case held that because of the dedication legislation, the city could not transfer its interest in a street to a third party because the abutting lot owner was entitled to it upon vacation. The reasoning involved here is not inconsistent with the holding in *Payne*.

5. The mineral estate lying below the street remains with the grantor by virtue of the severance occurring at statutory dedication. It is, therefore, meaningless to require the grantor to reserve the mineral estate under the street because it has already been severed by virtue of dedication and need not be reserved.

In contrast, where the mineral and surface estates are one, a transfer by reference to the surface also passes the mineral estate unless it is reserved. This is so because that estate comprises a single, unsevered unit.

dedication. The dedication creates separate estates. The sale of the lots passes only that estate described in the deed. This rule finds expression as:

> "From *Alford v. Rodgers* [242 Ala. 370, 373, 6 So.2d 409, 410] is the following: " ' * * * [A]s a rule a grantee can acquire by his deed only the land described in it, and does not acquire by way of appurtenant land outside such description.
>
> \*      \*      \*      \*      \*      \*
>
> " 'For in *Humphreys v. McKissock,* 140 U.S. 304, 11 S.Ct. 779, 781, 35 L.Ed. 473, it was said, quoting from *Woodhull v. Rosenthal,* 61 N.Y. 382, 390, that "land can never be appurtenant to other land, or pass with it as belonging to it. All that can be reasonably claimed is that the word 'appurtenance' will carry with it easements and servitudes used and enjoyed with the lands for whose benefits they were created. Even an easement will not pass unless it is necessary to the enjoyment of the thing granted." ' " *Standard Oil Co. v. Milner,* 275 Ala. 104, 152 So.2d 431, 438 (1962).

The same principle was phrased by other courts in *McConiga v. Riches,* 40 Wash. App. 532, 700 P.2d 331, 337 (1985) as follows:

> " 'That land is never appurtenant to land; * * * a fee may carry an easement or a lesser estate as an incident or an accretion, but the conveyance of the fee simple title to one piece of land will not carry as an incident or an accretion a fee of equal or greater degree and quality.' " (quoting *Hagen v. Bolcom Mills,* [74 Wash. 462] 470, 133 P. 1000 (quoting *White v. Jefferson,* [110 Minn. 276, 124 N.W. 373, 125 N.W. 262 (1910) ] )).

▋ We would be creating a special rule of conveyancing if we were to adopt the lot owners' views. This we decline to do. We adopt our original disposition of this case as set out in *Town of Moorcroft v. Lang, supra.*

We reverse the summary judgment of the district court.

CARDINE, Chief Justice, dissenting, with whom THOMAS, Justice, joins.

The majority opinion begins its analysis of statutory dedication with the flat statement that the act of dedication creates three separate interests: a fee simple determinable in the surface used for the street, a possibility of reverter in the same property, and a separate mineral estate below the street. While I have no quarrel with the characterization of the first two interests, there is *no basis for the statement that the mineral estate under the street is somehow severed from the mineral estate under the adjoining property.* Since the majority's result is based on this erroneous premise, I dissent.

The statement by the majority that a separate mineral estate underlying the street is created by dedication sets the stage for bizarre results. This separate mineral estate is presumably bounded on its sides by a vertical extension from the edges of the street above, with the upper limit of the mineral estate defined by the deepest points used for the street. Central to the majority's thesis is the premise that this estate is severed on dedication from the remainder of the dedicator's property and can thereafter only be conveyed by express reference and description in a conveyance. Thus, following the reasoning of the majority, the following scenario is possible:

1. The owner (O) in fee simple absolute of Blackacre subdivides the property.

2. O files a plat which shows streets in accordance with W.S. 34–12–102, and the plat is duly approved in accordance with W.S. 34–12–103. According to the majority, at this point a separate mineral estate under the streets is severed from the fee held by O.

3. Before any lots in the subdivision are sold, the plat is vacated in accordance with W.S. 34–12–106. The property dedicated for the streets reverts to O, who now owns the same property which he had prior to the dedication. However, it is now permanently divided into two estates, the mineral estate under the non-

existent streets and the remainder of the fee.

4. O subsequently conveys "all of Blackacre in fee simple absolute."

5. According to the majority, the separate mineral estate under the location of the formerly platted streets is not conveyed with Blackacre because it is not specifically described in the conveyance. As a result, O retains the separate mineral estate, which is described by a plat which has been vacated, with reference to streets that do not exist.

While I recognize that such a result could be reached by proper conveyancing, I do not agree that this type of "mineral reservation by implication" is required, or even supported, by the statutes providing for dedication of streets for the public use.

Our previous decisions treat the statutes concerning dedication of streets as being concerned with the streets, not with the dedicator's remaining property. When streets are dedicated by the filing of the plat, the property interests which the dedicator relinquishes include "only the surface and so much of the subsurface as is necessary for street construction and municipal services." *City of Evanston v. Robinson*, 702 P.2d 1283, 1289 (Wyo.1985). Only the shallow strip required for the street is severed from the property of the dedicator.

While it is true that such statutory dedication effects a *horizontal* severance of the mineral estate from the surface estate dedicated for the purposes of streets, this court has never held that said dedication effects a *vertical* severance of the mineral estate underlying the street from the mineral estate underlying the abutting property. In the *City of Evanston* case, we rejected the theory that the dedication of the street causes a vertical severance in the mineral estate below the street:

"We would impermissibly strain the express statutory provisions were we` to hold that those areas set apart for streets and alleys include a band of ground extending to the center of the earth and encompassing all of the minerals beneath the roadways." 702 P.2d at 1289.

Dedication under the statute therefore results in a severance of only the width, depth and length of the property required for the street. The dedicator still retains the entire remaining estate, including the complete and undivided mineral estate underlying his property. Since the mineral estate underlying the street is not severed from the surrounding land held by the dedicator at the time of the statutory filing, the dedication statute does not affect the later disposition of the property.

Thus, the true question is whether a subsequent transfer of the abutting property implies a reservation to the grantor of the mineral estate underlying the street. This question may be answered by reference to the existing law of the state and does not require adoption of the "implied reservation" theory advanced by the majority.

In the absence of statute or contrary judicial decision, the common law is the law in the state of Wyoming. W.S. 8–1–101. The majority correctly recognizes the common law rule, which is that a conveyance of property described as bounded by a street is presumed to extend to the center of the street. *Coumas v. Transcontinental Garage*, 68 Wyo. 99, 118, 230 P.2d 748, 754, 41 A.L.R.2d 539 (1951); see also cases collected at 49 A.L.R.2d 982 (1956). This rule is not, as the majority suggests, based on theories of appurtenant easements and unity of title. Rather, it provides a presumption to clarify the legal boundary of property that has been described in a conveyance by reference to a street or a plat. The basis for the presumption is succinctly stated in 2 *Thompson on Real Property* § 360, pp. 371–72 (1980 Replacement):

"It is an established rule that a conveyance of land bounded on or by a way, whether public or private, carries the title to the center of the way, if the grantor's title extends so far. The reason in support of this rule rests partly upon the principle that the legal terminus of a boundary by a monument is at the central point of the monument, and partly upon the presumption that ordinarily the grantor has no intention of reserving a fee in the boundary street or way when

its fase [sic] has ceased to be of benefit to him." (footnotes omitted)

While the conveyance cannot grant the street area itself because the fee is held by the municipality, there is nothing in the record to indicate intent of the grantor to reserve the mineral estate under the streets. The intent of the parties at the time the conveyance is made is not subsequently altered by the discovery of valuable minerals. I see no reason to imply a reservation merely to provide a windfall to the grantor. A basic principle of conveyancing is that reservations and exceptions must be expressly spelled out; in the absence of such language, a conveyance is presumed to transfer the entire estate owned by the grantor.

Nor can the grantor rely on an implied reservation by operation of law. At the time when the lots were originally conveyed, Wyoming had not ruled on the question; but in other states there were two general rules concerning the land under dedicated streets. In some states, the abutting landowners owned the entire fee subject to an easement for the street. In others, the municipality owned the entire fee, including both the surface and mineral estates. *See, e.g., Lambach v. Town of Mason*, 386 Ill. 41, 53 N.E.2d 601 (1944) (quoted in majority opinion at 1183). However, in no state was the grantor presumed to have retained the mineral estate under the street absent express reservation after the abutting lots have been conveyed. *See, e.g., Buell v. Redding Miller, Inc.*, 163 Colo. 286, 430 P.2d 471 (1967) (discussing statutory dedication in conjunction with *City of Leadville v. Bohn Mining Co.*, 37 Colo. 248, 86 P. 1038 (1906)). There is no basis for an assertion that a grantor could rely on the law to imply a reservation of the land under dedicated streets. Therefore, absence of an express reservation of

such land logically infers a lack of intent to reserve such land.

Since there is no evidence of intent by the grantor to retain the mineral estate, the common law presumptions should apply.[1] When the legislature enacts a statute dealing with property, it does not necessarily follow that all of the common law rules dealing with property are abrogated. We construe the meaning of statutes in light of the common law. *Goldsmith v. Cheney*, 468 P.2d 813, 816 (Wyo.1970). More specifically, we have said that "in construing statutes the rules of the common law are not to be changed by doubtful implication nor overturned except by clear and unambiguous language." *McKinney v. McKinney*, 59 Wyo. 204, 213, 135 P.2d 940, 942 (1943). While W.S. 34–12–104 describes the property interests dedicated to the public use, it does not purport to affect the remaining property of the dedicator. The only statute which makes reference to disposition of property after lots have been sold according to the plat is W.S. 34–12–109, which provides that on vacation of a street in accordance with statute "the proprietors of the lots so vacated may enclose the streets * * * adjoining lots in equal proportions." Neither of these statutes refers to the mineral estate underlying the street.

There is nothing in the statutes which is contrary to the common law presumption. Application of the common law results in the title to the mineral estate under the street being in the abutting landowners, and I would so hold. Accordingly, I dissent from the result reached by the majority.

THOMAS, Justice, dissenting.

I cannot agree with the majority opinion upon rehearing any more than I could agree with the original majority opinion in this case. In his dissenting opinion, Chief Justice Cardine has addressed some of my

---

**1.** The cases cited by the majority for the proposition that the common law presumption is not applicable where dedication creates a "fee," (majority at 1183, n. 2) do not involve a situation where the "fee" of the street has been severed from the "fee" of the underlying mineral estate. The cited cases are all from jurisdictions which treat statutory dedication as vesting title to both the surface and mineral estates in the municipality, a situation different from that presented here. See Annotation, *Relative rights, as between municipality and abutting landowners, to minerals, oil, and gas underlying streets, alleys, or parks*, 62 A.L.R.2d 1311 (1958).

concerns, and I am pleased to join in his dissent. While my efforts at articulation may not be any different than what I said in my prior dissenting opinion, I feel constrained to add some comments.

The majority position is very similar to what might occur if one took a symmetrical last piece of a pictorial jigsaw puzzle and inserted it upside down. In a sense, the puzzle is complete, but the picture is not. The product of the majority position in this case is an incomplete picture. If followed to an academically logical conclusion, what would ensue is that the developer, having granted a limited fee simple estate to the municipality for purposes of a public way, but also having retained a dominant mineral estate, would have the right to obstruct the surface of the street in a reasonable manner in order to develop his mineral estate. The public policy reasons opposing such a result would undoubtedly resolve that situation by denying the developer the right to produce his minerals. Of course, that is not an obstacle to the abutting lot owner who can develop without obstructing the public way. As the owner of the minerals, the abutting lot owner can recover his property without infringing on the surface estate of any other party.

The majority asserts that the adoption of the lot owners' view would create a special rule of conveyancing which the majority declines to do. In actuality, the result of the majority opinion is to create the special rule of conveyancing which is, as Chief Justice Cardine notes, an implied reservation of a mineral estate. The majority does this despite its concession that, with respect to the street itself, the rule of presumed intent would recognize ownership in the abutting landowners upon vacation. The majority, however, refuses to apply logically the rule of presumed intent to an assumed vertical severance of a mineral estate which, again, as Chief Justice Cardine points out, is an assumption that is not supported by Wyoming precedent.

I am puzzled about the reliance by the majority on authority from various and sundry jurisdictions rather than Wyoming precedent. My perception of Wyoming case law is that this court has carefully erected, block by block, a structure that readily resolves this conflict. The immediately preceding case is, of course, *City of Evanston v. Robinson*, 702 P.2d 1283 (Wyo.1985). After *Robinson*, the resolution of this case by the setting of the keystone was clearly predictable. Instead of following the clear direction of Wyoming precedent, however, the majority has procured a stone from a foreign quarry to denigrate the integrity of the structure. One might say that the product of the majority efforts has been to salt the mother lode in such a way that it has no future value.

To summarize briefly, the Wyoming court has recognized the product of common law dedications. *Gay Johnson's Wyoming Automotive Service Company v. City of Cheyenne*, 367 P.2d 787 (Wyo. 1961), reh. denied 369 P.2d 863 (1962). In subsequent cases, the effect of a statutory dedication has been treated as having substantially the same effect as that of a common law dedication. *Robinson; Ruby Drilling Company, Inc. v. Billingsly*, 660 P.2d 377 (Wyo.1983); *Payne v. City of Laramie*, 398 P.2d 557 (Wyo.1965). See *Morad v. Brown*, 549 P.2d 312 (Wyo.1976); *Coumas v. Transcontinental Garage, Inc.*, 68 Wyo. 99, 230 P.2d 748, 41 A.L.R.2d 539 (1951). Analysis of these several cases manifests the proposition that the limited fee simple created in a municipality by the statutory dedication has not been treated in any significant way as different from a common law dedication. The interest acquired by the municipality upon dedication is identical for all practical purposes. *Robinson*. In deciding these cases, the Supreme Court of Wyoming has followed the presumed intent rule, although it has not so identified it. Clearly, it should, if precedent is faithfully followed, apply this rule to the minerals as well as to the surface estate.

In Wyoming, a common law dedication of a street or alley created an easement for public use. *Payne*. The developer or dedicator retained all interest in the real estate that the easement did not encompass until he conveyed the property. The effect of the conveyance was to transfer the entire

remaining interest of the developer to his purchaser. The effect of the statutory dedication has been recognized as creating a limited fee simple in the municipality to be held in trust for proper public use. *Payne; Gay Johnson's.* The other effects are the same as a common law dedication. The developer retains the entire interest that is not encompassed in the limited fee simple until he conveys. When the developer conveys, however, the purchaser receives the same interest that a purchaser would receive if the dedication had been a common law dedication. The majority appears to accept this result with respect to the fee simple estate which actually is conveyed to the city by the dedication and would attribute that parcel to the abutting landowner, here the purchaser from the developer, upon vacation of the street. Logic favors doing exactly the same thing with respect to the portion of the real estate lying under the street, but that is not the majority opinion.

The result of the majority approach is unsettled ownership in most municipalities. Upon vacation of a street, the abutting landowner will own whatever the city has used for a street, but the subterranean area beneath the street still would belong to the developer. So, for example, the lot owner would commit a trespass if he drilled a water well from the surface of what had been the street into the estate retained by the developer. There is no sensible justification for that result. Furthermore, it is difficult for lay people to understand why, in those instances in which there has been common law dedication of the street, the abutting landowner owns every thing upon vacation of the street but, in the next block as to which there had been a statutory dedication, the abutting landowner does not. Landowners in the City of Evanston will confront this precise disparate result which the court has fostered, instead of settled. The public policy aspects of this situation demand a conclusion that, if the city is not to have the underlying minerals, they are part of the tract owned by the abutting landowner upon vacation of the street. The justification, of course, is that, in the absence of a reservation by the developer, the minerals were conveyed to the center of the street with the conveyance of the abutting lot.

Perhaps it is helpful to parse the effect of a subdivision with dedication of streets and alleys. First of all, the tract is subdivided into lots. The boundaries of those lots touch one another, but they can be separated by an overlay of a dedicated street, alley, or property for other public use. The effect of a vacation of the property dedicated to public use is to restore the original lot lines.

If one could look from a perspective of the bottom up, one would discover the original lot lines in place up to the level of public use involved in the street. At this point, the boundary would move horizontally and then vertically to the edge of the street. The majority approach, however, is to look from the top down and to conclude that, while one can discern the original lot line for purposes of attributing ownership upon vacation at the depth of public use, the lot line somehow shifted horizontally and then descended vertically with the upshot being that, contrary to standard conveyancing rules, the developer retained that area by implication. The lot line should be constant regardless of perspective.

Thus, in Wyoming, we have adopted a rule of presumed intent to retain, the antithesis of presumed intent to convey. This has occurred in the face of precedent which clearly points to a different result, with no attempt by the majority to distinguish or overrule that precedent. From this point, however, every one of the prior cases is placed in doubt. Foreign law has been relied upon to recognize title in nonresidents of Wyoming. The result is a *non sequitur*, legally, factually, and morally. *Stare decisis*, like the Latin language, seems to have died.

I would affirm the district court and hold that the minerals beneath the streets of Moorcroft are the property of the owners of the lots abutting the streets.