2002 WY 65

Alan L. HASVOLD and Cheryl L. Hasvold, husband and wife, Appellants (Plaintiffs),

v.

PARK COUNTY SCHOOL DISTRICT NUMBER 6 and Carol Rosencranse, individually, Appellees (Defendants).

No. 00–344.

Supreme Court of Wyoming.

April 30, 2002.

Representing Appellants: S. Joseph Darrah of Darrah & Darrah, P.C., Powell, WY.

Representing Appellee Park County School District No. 6: Scott E. Kolpitcke of Copenhaver, Kath & Kitchen, LLC, Powell, WY.

Representing Appellee Rosencranse: Marc C. Thompson of Webster & Thompson, LLC, Cody, WY.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

LEHMAN, Chief Justice.

[¶ 1] Appellants Alan and Cheryl Hasvold appeal from the district court's order granting summary judgment in favor of appellees Carol Rosencranse and Park County School District No. 6. The effect of the district court's order was to uphold the validity of the appellees' easements over the Hasvolds' property. We conclude that there are genuine issues of material fact which preclude granting judgments in favor of the appellees at this point in the litigation and, consequently, reverse and remand this case for trial as to the validity of the easements.

## ISSUES

[¶ 2] The Hasvolds present the following issues on appeal:

1. Whether the trial court erred in finding a valid easement appurtenant to property owned by Rosencranse when at the time of the granting of the easement the alleged appurtenant parcel owner was different than the grantee of the easement?

2. Whether the trial court erred in finding that the School District did not abandon its easement over appellants' property?

## FACTS

[¶ 3] This case involves two identical easements across the Hasvold property in Cody.[1] The dominant estates are owned by Rosencranse and the School District. The Hasvold property is located directly east of the Rosencranse property and directly north of the School District property. Originally, the Hasvold, Rosencranse, and School District properties were all owned by William and Marie Ellis.

[¶ 4] In 1986, the Ellises conveyed the Rosencranse property to George and Frances Kramer. George Kramer apparently died shortly thereafter; and Frances, subsequently, conveyed the property to their son, Donald Kramer. On August 5, 1987, the Ellises conveyed an easement over the Has-

1. In order to simplify the discussion in this opinion, we will refer to the respective properties by the name of the party who currently owns the property, regardless of the ownership of the property at the time we are discussing; i.e., "the Hasvold property," "the Rosencranse property," and "the School District property."

vold property to Tall Oak Tree, Inc. Donald Kramer was an owner and officer of Tall Oak. On August 20, 1987, Kramer conveyed the Rosencranse property to Tall Oak. Tall Oak mortgaged the property to the State of Wyoming, the Small Business Administration, and Western Bank of Cody. Although the record is not clear on this matter, the Small Business Administration apparently took title to the property at some point and then conveyed it to Rosencranse in 1993. The deed from the Small Business Administration to Rosencranse did not expressly mention the easement.

[¶ 5] Rosencranse operates Roger's Sports Center in a commercial building on her property. Rosencranse also leases part of the building to two other business lessees. Rosencranse and her lessees used the easement across the Hasvold property for business purposes.

[¶ 6] The School District took title to its property by warranty deed from the Ellises in 1982. The deed expressly granted the School District an easement across the Hasvold property for ingress, egress, and utilities. The School District constructed a middle school on its property and began holding classes in the school in 1994.

[¶ 7] The Ellises apparently conveyed the Hasvold property to the Deme Company, and the Deme Company conveyed it to the Hasvolds in 1996. The Hasvolds' warranty deed from the Deme Company expressly stated that the conveyance was subject to the easements of public record or otherwise established.

[¶ 8] In March 1999, the Hasvolds filed a complaint, requesting that the district court terminate the appellees' alleged easements over their property. The Hasvolds alleged in their complaint that Rosencranse was wrongfully using their property and that the School District had abandoned its easement. The appellees filed separate motions for summary judgment. Rosencranse claimed that, as the successor in interest to Tall Oak, she had a valid easement appurtenant over the Hasvolds property, and the School District asserted that it had not abandoned its easement.

[¶ 9] The parties submitted several briefs and numerous affidavits to the district court. The district court held a hearing on the summary judgment motions and, subsequently, issued an order granting the appellees' motions for summary judgment. The district court ruled that the undisputed evidence showed that the School District has used its easement over the Hasvold property in recent time and that such use defeated the Hasvolds' claim that the School District had abandoned its easement. The district court also ruled that Rosencranse owned a valid easement appurtenant for ingress, egress, and utilities over the Hasvold property.

[¶ 10] Rosencranse subsequently amended its answer and counterclaim by adding a claim for a prescriptive easement. That issue was not addressed in the district court's summary judgment decision. Rosencranse and the Hasvolds agreed to dismiss the prescriptive easement claim without prejudice and stipulated that the district court's summary judgment order was a final order. The district court entered a "Final Order and Order Dismissing Prescriptive Easement Claim Without Prejudice." The Hasvolds filed a timely notice of appeal. Additional facts relevant to specific issues will be set forth in our discussion of those issues.

## DISCUSSION

### A. Standard of Review

[¶ 11] Our standard for reviewing summary judgments was summarized in *Unicorn Drilling, Inc. v. Heart Mountain Irrigation Dist.*, 3 P.3d 857, 860 (Wyo.2000), as follows:

> Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Mountain Cement Co. v. Johnson*, 884 P.2d 30, 32 (Wyo.1994); W.R.C.P. 56(c). We review a summary judgment in the same light as the district court, using the same materials and following the same standards. "We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Four Nines*

*Gold, Inc. v. 71 Constr., Inc.,* 809 P.2d 236, 238 (Wyo.1991). Summary judgment serves the purpose of eliminating formal trials where only questions of law are involved. *Blagrove v. JB Mechanical, Inc.,* 934 P.2d 1273, 1275 (Wyo. 1997); *England v. Simmons,* 728 P.2d 1137, 1141 (Wyo.1986). We review a grant of summary judgment by deciding a question of law de novo and afford no deference to the district court's ruling on that question. *Sammons v. American Auto. Ass'n,* 912 P.2d 1103, 1105 (Wyo. 1996); *Blagrove,* 934 P.2d at 1275.

*Gray v. Norwest Bank Wyoming, N.A.,* 984 P.2d 1088, 1091 (Wyo.1999). A material fact is any fact that, if proved, would have the effect of establishing or refuting an essential element of a claim or defense asserted by a party. *Century Ready–Mix Co. v. Campbell County School Dist.,* 816 P.2d 795, 799 (Wyo.1991).

## B. *Rosencranse Easement*

 [¶ 12] The Hasvolds contend that the district court erred when it ruled that Rosencranse held a valid easement appurtenant over the Hasvold property. The Hasvolds claim that the Rosencranse easement was "in gross" and personal to Tall Oak because, at the time the Ellises granted it to Tall Oak, Tall Oak did not own the dominant estate. They argue, therefore, that the easement did not follow the land when it was transferred to Rosencranse.

 [¶ 13] An easement is defined as "an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property." *Mueller v. Hoblyn,* 887 P.2d 500, 504 (Wyo.1994); Restatement of Property § 450(a) (1944). In construing an easement, we seek to determine the intent of the parties to the easement. *R.C.R., Inc. v. Rainbow Canyon, Inc.,* 978 P.2d 581, 586 (Wyo.1999). *See also* Restatement Third, Property (*Servitudes*) § 4.1 (2000). We begin by attempting to glean the meaning of the easement from its language. *R.C.R., Inc.,* 978 P.2d at 586; *Steil v. Smith,* 901 P.2d 395, 396 (Wyo.1995). If the language of the easement is clear and unambiguous, we interpret the easement as a matter

of law, without resorting to the use of extrinsic evidence to determine the parties' intent. *Id.* If, however, the language is ambiguous, then the court looks to extrinsic evidence to ascertain the parties' intent. *R.C.R., Inc.,* 978 P.2d at 586; *Edgcomb v. Lower Valley Power and Light, Inc.,* 922 P.2d 850, 855 (Wyo.1996).

 [¶ 14] We distinguish between appurtenant easements and easements in gross as follows:

" 'An easement is appurtenant to the land when the easement is created to benefit and does benefit the possessor of the land in his use of the land.' " *Weber v. Johnston Fuel Liners, Inc.,* 519 P.2d 972, 975 (Wyo.1974) (quoting *Restatement of Property* § 453, at 2914 (1944)). In contrast, " '[a]n easement is in gross when it is not created to benefit or when it does not benefit the possessor of any tract of land in his use of it as such possessor.' " *Id.* (quoting *Restatement of Property, supra,* § 454, at 2917). An easement will not be presumed to be in gross when it can fairly be construed to be appurtenant. *Id.*

*R.C.R., Inc.* 978 P.2d at 586. The principles recently set out in the Restatement Third, Property are consistent with Wyoming case law. Restatement Third, Property (*Servitudes*) § 4.1(2000) states:

(1) A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.

Restatement Third, Property (*Servitudes*) § 4.5(1) specifically discusses how to distinguish between appurtenant easements and easements in gross:

(1) Except where application of the rules stated in § 4.1 leads to a different result, the benefit of a servitude is:

(a) appurtenant to an interest in property if it serves a purpose that would be more useful to a successor to a property interest held by the original beneficiary of the servitude at the time the servitude was created than it would be to the

original beneficiary after transfer of that interest to a successor;

(b) in gross if created in a person who held no property that benefited from the servitude, or if it serves a purpose that would be more useful to the original beneficiary than it would be to a successor to an interest in property held by the original beneficiary at the time the servitude was created[.]

[¶ 15] The Hasvolds point to the case of *Town of Moorcroft v. Lang*, 779 P.2d 1180 (Wyo.1989), as supporting their position that, in order to create a valid appurtenant easement, the grantee must own the dominant estate at the time of the grant. In the *Moorcroft* case, we held that a common law dedication of streets creates an appurtenant easement in the street property for use by the public for public purposes. 779 P.2d at 1184. This court applied the "presumed intent" rule and held that the grant of a lot by a developer also passes title to the strip of land which runs from the boundary of the lot to the middle of the adjoining street, subject to the public's easement. *Id.* The court explained that the result was governed by the fact that creation of an appurtenant easement requires a servient estate and a dominant estate. *Id.*

[¶ 16] We cannot accept the Hasvolds' argument that the *Moorcroft* case dictates that the grantee of an easement must own the dominant estate at the time the easement is granted in order for the easement to be appurtenant. The facts of the *Moorcroft* case are vastly different from the facts of this case. *Moorcroft* was concerned with a public easement created by the dedication of streets, while this case involves a private easement created by an express grant. Moreover, the *Moorcroft* case could even be said to support a position contrary to the Hasvolds' in light of the fact that the court stated that the easement was appurtenant and the public, as the owner of the dominant estate, did not actually own any real property, which benefited from the easement.

[¶ 17] Of course, in the typical situation, the grantee of an appurtenant easement will already have acquired title to the dominant estate when the easement is granted. Nevertheless, the First Restatement acknowledged the possibility that "an easement appurtenant may be created to benefit a person as the possessor of certain land contingent upon his obtaining possession thereof, or upon his future selection of land to which the easement will then become appurtenant." Restatement of Property, § 453, cm. a (1944).

[¶ 18] In the case at bar, Donald Kramer was the fee owner of the Rosencranse property at the time the Ellises conveyed the easement to Tall Oak. Kramer was an owner and officer of Tall Oak. Tall Oak needed the easement in order to secure financing from its lenders. Shortly after the easement was recorded, Kramer deeded the property to Tall Oak. At that point, the dominant estate and easement right were unified in title to Tall Oak.

[¶ 19] Under these circumstances, the fact that Tall Oak did not own the dominant estate when the easement was conveyed does not, by itself, dictate that the easement cannot be interpreted as being appurtenant to the land. The ultimate determinant of whether an easement is appurtenant or in gross is the intent of the parties to the easement. As we stated, *supra*, in determining the parties' intent, we look first to the language of the easement.

[¶ 20] The easement document in this case [2] states, in relevant part:

### NONEXCLUSIVE EASEMENT

WILLIAM D. ELLIS and MARIE O. ELLIS, husband and wife, Grantors, for and in consideration of $10.00 and other good and valuable consideration to them in hand paid, the receipt for which is hereby acknowledged, GRANT AND CONVEY, unto TALL OAK TREE, INC., a Wyo-

2. We recognize that, in their statement of the issues, the Hasvolds narrowly defined the issue on appeal as involving the "unity of title" matter. Nevertheless, the Hasvolds and Rosencranse discussed the broader issue of the construction of the easement document and the intent of the parties to the easement in their briefs. Consequently, we are comfortable considering those matters in this decision.

ming corporation, of 2812 Big Horn Avenue, Cody, Wyoming 82414, Grantee:

A 60–foot nonexclusive easement for ingress and egress, including utilities, being located in Cody, Park County, Wyoming . . . .

[¶ 21] In *R.C.R., Inc.*, this court identified certain terms which are "badges" of an appurtenant easement, including language which indicates: (1) that the easement was created to benefit a specific tract of land; (2) that the grant was for a perpetual right-of-way for ingress and egress, (3) that the grantee has the right to inspect and maintain the easement; (4) that the right is not limited to the possessor personally; (5) that the grant expressly extends the right to the grantees, their heirs, executors, administrators, successors, assigns and legal representatives; and (6) that the easement document does not contain any limitations on the transferability of the easement to future transfers of both the dominant and servient estates. 978 P.2d at 586.

[¶ 22] The easement document in this case incorporates some of the "badges" of an appurtenant easement, but there are others that are noticeably absent. The easement document does not state that the easement is intended to benefit the Rosencranse property. In addition, the document does not expressly state that the right-of-way is perpetual in duration or that the dominant estate owner has the right to inspect and maintain it. There is no language which expressly states that the easement will pass with the title to the property. The grant was simply to Tall Oak Tree, Inc. There was no mention of its successors, heirs, assigns, etc. The aforementioned terms all suggest that the parties may have intended that the easement benefit Tall Oak, personally, rather than the real property. On the other hand, the document does not state that the easement was personal to Tall Oak Tree, Inc. In addition, the document specifically states that the pur-

pose of the easement is for ingress, egress, and utilities. These terms suggest that the easement may have been intended to be appurtenant.

[¶ 23] The easement document is sufficiently ambiguous to require the inspection of extrinsic evidence to determine whether the parties to the conveyance intended for the easement to be appurtenant or in gross. Evidence was presented at the summary judgment hearing suggesting that the easement was created to benefit and does benefit the possessors of the Rosencranse property in their use of the property. Specifically, Donald Kramer stated in his affidavit that the easement was created to benefit the property, and Carol Rosencranse averred that she and her lessees use the easement to access the side and back of the building situated on the dominant estate as part of their business activities. In contrast, the Hasvolds presented evidence which suggested that the Ellises intended to grant a temporary personal easement to Tall Oak to facilitate the company's construction of an addition to the building located on the Rosencranse property. The affidavits of Jerry Mooren and Leroy Ellis indicate that the Ellises attempted to block use of the easement by the owners of the Rosencranse property after the construction project was finished.[3]

[¶ 24] Our examination of the evidence submitted in the summary judgment proceeding convinces us that there are genuine issues of material fact as to the intent of the parties to the easement. The district court, therefore, erred when it granted a summary judgment in favor of Rosencranse.

### C. *School District Easement*

[¶ 25] The Hasvolds maintain that the district court erred when it granted a summary judgment in favor of the School District. The district court ruled that, as a matter of law, the School District had not

---

**3.** The parties presented some issues to the district court pertaining to the admissibility of certain statements in the affidavits of Leroy Ellis and Jerry Mooren. The statements of concern were those allegedly made by Marie Ellis prior to her death. The district court asked the parties to address the evidentiary issues in their supple-

mental briefs, but the court did not rule on those issues in its decision. We do not need to determine the admissibility of the disputed statements at this juncture because, even without considering those statements, we find that there are genuine issues of material fact concerning the intent of the parties to the easement.

abandoned its easement across their property. The School District contends that the district court correctly held that it was entitled to a judgment, as a matter of law, confirming its easement over the Hasvold property.

[¶ 26] An easement holder may abandon his easement and relieve the servient estate of the burden of the easement under certain circumstances. *Carney v. Board of County Comm'rs of Sublette County*, 757 P.2d 556, 562 (Wyo.1988). "Abandonment of an easement requires an intentional relinquishment indicated by conduct which discloses the intention to surrender the right to use the land authorized by the easement." *Mueller*, 887 P.2d at 505. As such, the determination of whether or not an easement has been abandoned turns largely upon the intention of the dominant estate owner. *Id.* at 506 The servient estate owner must prove that the dominant estate owner intended to abandon the easement and such intention "may be inferred only from strong and convincing evidence." *Id.* (quoting *Harrison v. State Highways & Transp. Comm'n*, 732 S.W.2d 214, 221 (Mo.App.1987)). Abandonment cannot be established simply by showing a period of nonuse. *Mueller*, at 505. Abandonment may, however, be proven by showing a period of nonuse and providing evidence of "affirmative and unequivocal acts indicative of an intent to abandon" which are inconsistent with the continued existence of the easement. *Mueller*, 887 P.2d at 506 (quoting *Richards Asphalt Co. v. Bunge Corp.*, 399 N.W.2d 188, 192–93 (Minn.App.1987)).

[¶ 27] When viewed in the light most favorable to the Hasvolds, the evidence presented in the summary judgment proceedings was not sufficient to justify the district court's decision that the School District had not abandoned its easement. School District employees averred that they used the easement to access an irrigation ditch to burn vegetation in 1994 or 1995. In 1994, the School District erected a chain-link fence around the perimeter of the school property. The fence transects the easement, but the School District did not construct a gate at the point where the fence crosses the easement. Consequently, it was impossible for the School District to access the easement from the northern boundary of the school property without removing the fence. Additionally, the School District created a habitat area on its property adjacent to the easement. The trees, shrubs, and pond in the habitat area may be obstacles to the School District's future use of the easement. There are also piles of dirt, abandoned cars, and weeds obstructing part of the southern end of the easement. The School District has also developed other accesses to its property, potentially vitiating its need to use the easement across the Hasvold property.

[¶ 28] Taken together, this evidence was sufficient to create material issues of fact regarding the School District's intentions as to its future use of the easement. Consequently, we hold that the district court erred by ruling, as a matter of law, that the School District did not abandon its easement.

### CONCLUSION

[¶ 29] We conclude that there are genuine issues of material fact concerning whether the parties to the Rosencranse easement intended for it to be appurtenant or in gross. Likewise, genuine issues of material fact exist as to whether the School District intended to abandon its easement. This case is, therefore, reversed and remanded to the district court for trial.