# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 62

APRIL TERM, A.D. 2014

May 14, 2014

LEEKS CANYON RANCH, LLC, a
Wyoming limited liability company;
LEEKS CANYON, LLC, a Wyoming
limited liability company; ELIZABETH
LOCKHART and KELLY LOCKHART,
wife and husband,

Appellants
(Defendants),

v.

S-13-0173

CALLAHAN RIVER RANCH, LLC, a
Wyoming limited liability company; and
PORTER RIVER RANCH, LLC, a
Wyoming limited liability company,

Appellees
(Plaintiffs).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellants:*
> Weston W. Reeves and Anna M. Reeves Olson of Park Street Law Office, Casper,
> Wyoming; and Thomas N. Long and Aaron J. Lyttle of Long Reimer Winegar
> Beppler LLP, Cheyenne, Wyoming. Argument by Mr. Reeves.

*Representing Appellees:*
> James R. Belcher of Crowley Fleck PLLP, Cheyenne, Wyoming.

*Before HILL, BURKE, DAVIS, and FOX, JJ., and GOLDEN, J., (Ret.)*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]   The Jackson Hole Hereford Ranch was divided by a complicated series of conveyances between entities controlled by a brother and sister, two grandchildren of the original owner, who were unable to agree on the validity of language purporting to reserve or convey an easement from the sister's property across the brother's property. Brother (and the related entities he controls) sought quiet title and injunctive relief, asserting that the requirements for finding an express or implied easement had not been met; sister (and her husband and the related entities they control) filed a counterclaim asserting the existence of a valid easement.  The district court found that the parties failed to sufficiently describe the easement as required by Wyo. Stat. Ann. § 34-1-141, and that the express easement was therefore void.  Additionally, the district court found that because the parties specifically contemplated an easement, but failed to effectuate their intent, an implied easement was inappropriate.  We reverse.

## ISSUES

[¶2]   We restate the issues as follows:

1.  Did the grantor reserve part of the disputed easement when it conveyed parcels in 1992?

2.  Is the easement language in the deeds specific enough to locate the easement in accordance with Wyo. Stat. Ann. § 34-1-141?

3.  Is the easement appurtenant to the land or in gross?

4.  Did the grantor convey an easement across Parcel 25 when it conveyed Parcel 19 to Elizabeth Lockhart in 1998?

## FACTS

[¶3]   Robert Bruce Porter owned the Jackson Hole Hereford Ranch (the Ranch) in Teton County, Wyoming.  The Ranch was conveyed to the Robert Bruce Porter Trust (the Trust) in accordance with his Last Will and Testament.  Robert Gill and Elizabeth Lockhart are the grandchildren of Robert Bruce Porter.[1]  In 1992, the Trust divided the property into thirty-five acre parcels in order to preserve development options for the Ranch.  The Trust retained one in four parcels and conveyed the remainder to three

---

[1]Appellees Callahan River Ranch, LLC and Porter River Ranch, LLC are limited liability companies owned wholly or in part by Robert Gill.  Appellant Kelly Lockhart is Elizabeth Lockhart's husband. Leeks Canyon Ranch, LLC and Leeks Canyon, LLC are companies owned by the Lockharts.  We will refer to the Appellees as the Gills and the Appellants as the Lockharts.

limited liability companies (Jackson Hole Hereford Ranch, LLC (JHHR), Roliz, LLC (Roliz), and C.C.N.P., LLC (CCNP) (collectively the LLCs)), forming a checkerboard pattern in order to prevent any two entities from owning contiguous thirty-five acre parcels. Following the 1992 conveyances, ownership of the parcels at issue was distributed as follows:

Parcel 19 – Trust;
Parcel 20 – JHHR;
Parcel 24 – CCNP;
Parcel 25 – Trust; and
Parcel 27 – Roliz.[2]

The conveyances of Parcels 20, 24, and 27 from the Trust to the LLCs contained the following language:

> Together with and subject to all easements of record and sight, and a non-exclusive 60.0 foot road and utility easement through parts of Sections [12, 13, and 24] in a location to be determined but to generally follow the existing roads to Shootin' Iron County Road 22-20.

[¶4] In 1998, the Trust conveyed Parcel 19 to Elizabeth Lockhart (1998 conveyance). The deed included easement language mirroring that of the 1992 conveyances:

> Together with and subject to all easements of record and sight, and a non-exclusive 60.0 foot road and utility easement through parts of Sections 12, 13, and 24 in a location to be determined but to generally follow the existing roads to Shootin' Iron County Road 22-20.

The Lockharts constructed a residence on Parcel 19 in 2001.

[¶5] While the Ranch was owned by Robert Bruce Porter, a number of roads crossed the Ranch to access various portions of the property.[3] The parties conceded at oral argument, however, that there is only one route from Parcel 19 to the Shootin' Iron Road, subject to the easement language contained in both the 1992 and the 1998 conveyances. That route was used throughout the time that the Trust and the LLCs owned the property,

---

[2] A map is attached to this opinion, solely to assist in understanding the location of the parcels and the road at issue.

[3] An additional road was also utilized to access Parcel 19, which traversed the property of the Ranch's northern neighbors, the Olivers. In 1986, the Olivers granted a limited easement to the Trust allowing the Trust "access to one existing single family dwelling and guest house and for existing agricultural operations" (Oliver easement).

and the Lockharts continued to use the road, without interference, to access their residence after they acquired Parcel 19 in 1998. However, a conflict arose after an arbitration divided the Ranch between the siblings.

[¶6]    In accordance with the Last Will and Testament of Robert Bruce Porter, Elizabeth Lockhart and Robert Gill were each to receive an equal portion of the Ranch property upon the dissolution of the Trust. To achieve this result, Lockhart and Gill participated in an arbitration proceeding. At the conclusion of the arbitration, Lockhart received the northern part of the lower ranch while Gill received the southern part. Parcel 19 is located in the northern part of the lower ranch granted to Lockhart; however, the road leading to Parcel 19 from Shootin' Iron County Road 22-20 traverses the southern part of the lower ranch conveyed to Gill.

[¶7]    Following the arbitration, the parties' relationship deteriorated. Soon, the Gills began objecting to the Lockharts' use of the road to Parcel 19. The local sheriff was called on at least one occasion, and the Gills instituted the current action to quiet title in their property, alleging that there exists no valid easement from Parcel 19 to Shootin' Iron County Road 22-20.

[¶8]    The Gills filed their Complaint to Quiet Title and for Injunctive Relief on September 29, 2011. The Lockharts answered and filed a counterclaim alleging that a valid easement does exist, and making a number of claims for relief relating to the easement. Following discovery, the Gills filed a motion for summary judgment. The Lockharts responded and contended they were entitled to either an express or an implied easement. The district court held a hearing on April 11, 2013, and issued an order on July 3, 2013. A final judgment was entered on July 24, 2013.

[¶9]    The district court initially determined that the doctrine of implied easements did not apply. The district court based its decision on this Court's language in *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, 81 P.3d 215 (Wyo. 2003) ("*Hansuld I*"), where we stated:

> The doctrine of implied easements was created for courts to examine the particular facts suggesting the intent of the parties to a conveyance and determine if the parties omitted granting an easement reasonably necessary for the use and enjoyment of the property. The implied easement does not arise where the parties to the conveyance expressly agree otherwise or where proof of its elements is not established.

*Id*. at ¶ 16, at 218-19 (internal quotes and citations omitted). The district court interpreted this passage to mean that if the parties attempt to convey an express easement and fail, implying an easement would be inappropriate. The district court stated:

3

[T]his is not an instance in which the parties had not bothered to create an easement in the conveyance of a property or had no conscious intention to do so. Instead, this is a case where an easement was specifically contemplated; the parties simply never followed through on determining the precise location of the easement. Because the deeds that created the parcels at issue provided for the creation of an easement, it would be inappropriate to apply the doctrine of implied easement to this case.

[¶10] The district court then went on to find that the Lockharts had not established the existence of an express easement either. The district court determined that the purported easement contained in the conveyances failed to comply with Wyo. Stat. Ann. § 34-1-141 (LexisNexis 2013) as the description was not sufficiently specific to locate the easement.

In this case, the Defendants are attempting to establish the existence of a road easement, which would require a more specific description. Furthermore, it is undisputed that multiple roads run through the River Ranch. Thus, it is impossible from the language of the deeds referencing "existing roads," to determine with any specificity the location of the easement as a matter of law. Consequently, for the express easement to be valid, the specific description of the road would have to have been determined in the future, as specifically contemplated in the deeds. Moreover, for the easement to be valid, the specific description would need to have been recorded within one year of the conveyance pursuant to statute. That was not done here, and the express easement therefore fails.

The Lockharts timely filed their Notice of Appeal.

[¶11] We now reverse the district court's determination that the express easement fails, and remand to the district court to enter an order consistent with this opinion. Because we find that there is an express easement, it is not necessary to address whether an implied easement exists.

## STANDARD OF REVIEW

[¶12] When summary judgment is based on interpretation of a contract:

4

The initial question of whether the contract is capable of being understood in only one way is a question of law for the court. If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties. In such case, the next question, what is that understanding or meaning, is also a question of law. When we review the district court's summary judgment decisions that a contract is capable of being understood in only one way and what that understanding is, we accord no deference to those decisions.

*Claman v. Popp*, 2012 WY 92, ¶ 23, 279 P.3d 1003, 1012 (Wyo. 2012) (quoting *Union Pacific Railroad Co. v. Caballo Coal Co.*, 2011 WY 24, ¶ 13, 246 P.3d 867, 871 (Wyo. 2011)).

We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.

*Jubie v. Dahlke (In re Estate of Dahlke)*, 2014 WY 29, ¶ 26, 319 P.3d 116, 123-24 (Wyo. 2014) (internal citations omitted) (quoting *DiFelici v. City of Lander*, 2013 WY 141, ¶ 7, 312 P.3d 816, 819 (Wyo. 2013)).

## DISCUSSION

[¶13] "An easement is defined as 'an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property.'" *Hasvold v. Park Cnty. Sch. Dist. No. 6*, 2002 WY 65, ¶ 13, 45 P.3d 635, 638 (Wyo. 2002) (quoting *Mueller v. Hoblyn*, 887 P.2d 500, 504 (Wyo. 1994)).

An easement is an acquired interest, not a natural incident of landownership as are water rights and the right to support. Easements are created expressly [and] implied in certain circumstances . . . . Land burdened by an easement is appropriately termed a servient tenement or a servient estate. If the easement benefits a particular parcel of land, that parcel is known as the dominant tenement or dominant estate, and the easement is said to be appurtenant to it. If the easement only benefits an individual personally, not as owner of a particular parcel of land, the easement is termed in gross.

Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 1:1, at 1-6 (2014).

[¶14]   The Gills argue that the deeds are insufficiently specific to convey an easement for the road from Parcel 19 to Shootin' Iron County Road 22-20 in the 1992 and the 1998 conveyances.  They claim that, pursuant to Wyo. Stat. Ann. § 34-1-141(c), the parties had one year in which to file an acceptable description, which they failed to do.  The Lockharts, however, argue that the description is sufficiently specific to locate the road and thus, the one-year filing period does not apply.  We agree with the Lockharts that the easement descriptions were sufficiently specific.

> Our deed interpretation rules focus on deriving the intentions of the parties.  We start with the language utilized by the parties to the deed, giving that language its plain and ordinary meaning.  If the language is clear and unambiguous, we look only to the "four corners" of the deed in ascertaining the parties' intent.
>
> However, we have also recognized that, even if a contract is unambiguous, we can examine evidence of the circumstances surrounding the execution of the deed to arrive at the parties' intent.  Relevant considerations may include the relationship of the parties, the subject matter of the contract, and the parties' purpose in making the contract.
>
> [I]t has long been the law that we look to the meaning of terms at the time of execution of an unambiguous deed.  In 1899, we stated in *Balch* [*v. Arnold*], 9 Wyo. [17,] 29, 59 P. [434,] 436 [1899]: "The rule in such cases [involving deed interpretation] is that the intention of the parties is to be ascertained by considering all the provisions of the deed, *as well as the situation of the parties*, and then to give effect to such intention if practicable." (emphasis added).  Understanding the importance of the use of "surrounding circumstances" evidence is not difficult when you take into account the definition of "plain meaning" as used in contract interpretation cases.  The "plain meaning [of a contract's language] is that 'meaning which [the] language would convey to reasonable persons *at the time and place of its use*.'" *Newman* [*v. Rag Wyo. Land Co.*, 2002 WY 132], ¶ 12,

6

53 P.3d [540,] 544 [(Wyo. 2002),] quoting *Moncrief v. Louisiana Land and Exploration Company*, 861 P.2d 516, 524 (Wyo. 1993).

*Ecosystem Res., L.C. v. Broadbent Land & Res., L.L.C.*, 2007 WY 87, ¶¶ 9, 10, 158 P.3d 685, 688 (Wyo. 2007) (some citations omitted). Moreover, "If the language of the easement is not ambiguous and if the intent of the parties can be gathered from its language, that should be done as a matter of law." *Thornock v. Esterholdt*, 2013 WY 42, ¶ 6, 299 P.3d 68, 69 (Wyo. 2013) (quoting *Edgcomb v. Lower Valley Power & Light*, 922 P.2d 850, 854 (Wyo. 1996)).

[¶15] In making our determination, we examine the various conveyances to determine whether they created an easement benefitting Parcel 19. We will first analyze the 1992 conveyances from the Trust to the LLCs, and then the 1998 conveyance from the Trust to Elizabeth Lockhart.

## I. Did the grantor reserve part of the disputed easement when it conveyed parcels in 1992?

[¶16] The easement language in the deeds to the LLCs reads as follows:

Parcel 20 to JHHR

Together with and subject to all easements of record and sight, and a non-exclusive 60.0 foot road and utility easement through parts of Sections 12, 13, and 24 in a location to be determined but to generally follow the existing roads to Shootin' Iron County Road 22-20.

Parcel 24 to CCNP

Together with and subject to all easements of record and sight, and a non-exclusive 60.0 foot road and utility easement through parts of Sections 13, and 24 in a location to be determined but to generally follow the existing roads to Shootin' Iron County Road 22-20.

Parcel 27 to Roliz

Together with and subject to all easements of record and sight, and a non-exclusive 60.0 foot road and utility easement through parts of Section 24 in a location to be determined but

> to generally follow the existing roads to Shootin' Iron County
> Road 22-20.

At the outset, we must decide whether the Trust reserved an easement benefitting Parcel 19, which the Trust retained, when it conveyed these parcels to the LLCs.

[¶17] There are no particular words required to expressly reserve an easement in the grantor. *Wallis v. Luman*, 625 P.2d 759, 767 (Wyo. 1981). Instead, the touchstone to determine the existence of an easement is whether the language demonstrates the grantor's intent to reserve an easement. *See Ecosystem Res.*, 2007 WY 87, ¶ 10, 158 P.3d at 688 (stating that deed interpretation focuses on deriving the intention of the parties); *Edgcomb*, 922 P.2d at 854; 25 Am. Jur. 2d *Easements and Licenses* § 15 (2004).

[¶18] As we have recognized, relevant considerations when attempting to find the parties' intent "may include the relationship of the parties, the subject matter of the contract, and the parties' purpose in making the contract." *Ecosystem Res.*, 2007 WY 87, ¶ 10, 158 P.3d at 688. All of these considerations point toward a finding that an easement was intended when the Trust conveyed the property in 1992.

[¶19] The relationship of the parties indicates that all had the same knowledge and operated on a level playing field. Though there are several entities involved, the Trust and all the LLCs are controlled by family members, including Gill and Lockhart. As family members, the parties had similar familiarity with the property, similar awareness of the existence of the road, and similar knowledge of the purpose of the conveyances.

[¶20] The purpose in making the conveyances also demonstrates the parties' intent to reserve an easement to access Parcel 19. Their shared intent was to divide the property for development, which required access to each parcel. The conveyances were accomplished to avoid an anticipated zoning change which would have limited the parties' ability to develop the Ranch in the future. In 1992, the only access to Parcel 19 lay in the road from Parcel 19 to the Shootin' Iron County Road 22-20.[4] If the Trust had not reserved an easement when it conveyed the parcels to the LLCs, there would have been no access to any residences later built on Parcel 19. Without access, development of the Ranch would have been impeded, thereby defeating the purpose of dividing the Ranch. Moreover, we have repeatedly found that landlocking property in Wyoming is not favored. *See, e.g., Reidy v. Stratton Sheep Co.*, 2006 WY 69, ¶ 32, 135 P.3d 598, 610 (Wyo. 2006).

---

[4] While the Oliver easement did provide access to the north, such access was limited to existing residences and agricultural purposes. In the event that the Ranch was developed, which was the purpose of the 1992 conveyances, that northern access would prove insufficient to access the various parcels.

[¶21] The nature of the property and use of the road prior to the conveyance also support the contention that the parties intended an easement. The property was in unified ownership prior to the conveyance, and the road at issue was in constant use by the parties both before and after the conveyance. *See Heigert v. Londell Manor, Inc.*, 834 S.W.2d 858, 868 (Mo. Ct. App. 1992) (finding that the term "subject to" was sufficient to create an easement considering that there was unity of ownership prior to the conveyance and the roadway in question was in constant use).

[¶22] Finally, the language of the easement itself indicates an intent to convey an easement. Each of the deeds includes easement language beginning, "Together with and subject to . . . ." This Court has not yet had the opportunity to establish whether the language "subject to" when used in a deed, without more, is sufficient to reserve an easement in the grantor. This issue, however, has been addressed by numerous other jurisdictions, which are divided on the matter. *See* Bruce & Ely, Jr., *supra* ¶ 13, § 3:8, at 3-23 − 3-25 (citing jurisdictions finding that use of the words "subject to" is sufficient to reserve an easement and jurisdictions finding that "subject to" is insufficient to reserve an easement).

[¶23] We find that use of the words "subject to" demonstrate the grantor's intent to reserve an easement. We are assisted in our interpretation by our review of the circumstances surrounding the 1992 conveyances. The words "subject to" would be rendered meaningless if we were to determine that they were insufficient to reserve an easement. At the time of the conveyances, there existed no easements on the Ranch as the entirety of the property was owned by one entity, the Trust. *See* Bruce & Ely, Jr., *supra* ¶ 13, at § 3:11, at 3-35 ("An easement is by definition a nonpossessory interest in land of another. Thus, it is axiomatic that a landowner cannot obtain an easement in the landowner's own property."). Therefore, the words "subject to" could not indicate that the land was conveyed subject to an already existing easement, as no easement existed prior to the 1992 conveyances. As one court noted, "[W]e are drawn to the lack of any explanation for the 'subject to' language, other than an intended conveyance. To hold otherwise would render [the] 'subject to' language useless or surplusage, which courts are loathe to do." *Camino Sin Pasada Neighborhood Ass'n v. Rockstroh*, 889 P.2d 247, 250 (N.M. Ct. App. 1994).

[¶24] We find that, based on the language of the deeds and the surrounding circumstances, the deeds of the 1992 conveyances reserved easements over Parcels 20, 24, and 27 benefitting Parcel 19.

[¶25] We now turn to the question whether the easement was described with sufficient specificity.

9

## II. *Is the easement language in the deeds specific enough to locate the easement in accordance with Wyo. Stat. Ann. § 34-1-141?*

[¶26] Wyo. Stat. Ann. § 34-1-141 provides, in pertinent part:

> (a) Except as provided in subsection (c) of this section, easements across land executed and recorded after the effective date of this act which do not specifically describe the location of the easement are null and void and of no force and effect.
>
> . . . .
>
> (c) For purposes of this section an easement or agreement which does not specifically describe the location of the easement or which grants a right to locate an easement at a later date shall be valid for a period of one (1) year from the date of execution of the easement or agreement. If the specific description is not recorded within one (1) year then the easement or agreement shall be of no further force and effect.
>
> (d) For purposes of this section the specific description required in an easement shall be sufficient to locate the easement and is not limited to a survey.

[¶27] First, the Gills contend that the language "to generally follow the existing roads to Shootin' Iron County Road 22-20" fails to provide a description specific enough to locate the easement. As a result, in accordance with Wyo. Stat. Ann. § 34-1-141(c), in order for the easement to become effective, the parties were required to record a more specific description within one year, which they failed to do. They next argue that the language "in a location to be determined" clearly demonstrates that the easement had not yet been located at the time of the conveyance.

[¶28] The description required to locate an easement need not be a survey; instead, a description is sufficient if the easement is locatable. Wyo. Stat. Ann. § 34-1-141(d). We have stated that "the type of description necessary to satisfy the statute will depend on the nature of the encumbrance." *Horse Creek Conservation Dist. v. State ex rel. Wyo. Attorney General*, 2009 WY 143, ¶ 38, 221 P.3d 306, 318 (Wyo. 2009).

[¶29] In *Horse Creek Conservation District*, we determined whether a recreational use easement described as being "adjacent [to] public lands designated for recreational use" was sufficient to comply with Wyo. Stat. Ann. § 34-1-141. 2009 WY 143, ¶ 5, 221 P.3d

10

at 310. We held that the term "adjacent" was "sufficiently definite to allow the encumbered property to be located." *Id.* at ¶ 36, at 318. In so finding, we discussed our earlier ruling in *Markstein v. Countryside I, L.L.C.*, 2003 WY 122, 77 P.3d 389 (Wyo. 2003):

> *Markstein* indicates that the type of description necessary to satisfy the statute will depend on the nature of the encumbrance. Obviously, a fishing easement is different from a road easement because more varied lands will be used to fulfill the dominant owner's right. In the context of a fishing easement, a more general description of the areas encumbered will be sufficient.

*Horse Creek Conservation Dist.*, 2009 WY 143, ¶ 38, 221 P.3d at 318.

[¶30] The Gills argue that the foregoing passage demonstrates that the "to generally follow" language is not sufficiently definite to locate the easement. But, "to generally follow" refers to a specific route which had been in use on the Ranch for many years. *See, e.g.*, *R.C.R., Inc. v. Rainbow Canyon, Inc.*, 978 P.2d 581, 588 (Wyo. 1999) (testimony that "there was only one road" strong evidence that the parties intended the easement to be located on the only access road in existence at the time the easement was granted). In *Markstein*, this Court considered language describing fishing right easements that were "to be used within a particular region of the servient estate and includes a specific legal description . . . . In addition, two separate sketch maps are also incorporated and attached to the agreement to further denote the applicable area of land involved." 2003 WY 122, ¶ 45, 77 P.3d at 402. This Court found that it was sufficiently specific to comply with the statute. *Id.* The easement language before us, considered in light of the existence of a clearly identified road and the relationship and knowledge of the parties involved, is narrowly tailored enough to meet the standard of Wyo. Stat. Ann. § 34-1-141, and the guidelines set forth by this Court in *Horse Creek* and *Markstein*.

[¶31] Here, the easement describes the way as a route "to generally follow the existing roads to Shootin' Iron County Road 22-20." There is no dispute that such a road exists. In fact, neither party has ever had any question as to where the road to which the easement refers is located. The road had been used as a means of ingress and egress prior to the 1992 conveyances, and thereafter for a number of years. Given the description, the fact that the road described exists, and that neither the Gills nor the Lockharts have any doubt as to its location, we conclude that the easement description is sufficient to locate it. "[T]he dominant tenement need not be described within the instrument, so long as it exists and can be identified." *Lozier v. Blattland Invs., LLC*, 2004 WY 132, ¶ 15, 100 P.3d 380, 385 (Wyo. 2004) (citing *Pokorny v. Salas*, 2003 WY 159, ¶ 23, 81 P.3d 171, 177 (Wyo. 2003)).

[¶32] The Gills further argue that the language "at a location to be determined" demonstrates that the parties intended to locate the easement at a later date, requiring them to record a specific description within one year, which was never done. This interpretation, however, fails to consider the circumstances surrounding the conveyances in 1992, which demonstrate the parties' intent to convey an easement over the road that existed at the time. In keeping with the intent of the parties, gleaned from the deed language itself and the surrounding circumstances, we find that the language "at a location to be determined" refers to the 60-foot width as measured from the centerline of the road already in place. The Gills admit that at some places along the road it would be necessary to skirt a tree or a bush. This would not destroy the easement's compliance with the statute, which requires only that the easement be capable of being located.

[¶33] The 1992 conveyances demonstrate the parties' intent to reserve an easement to Parcel 19 through Parcels 20, 24, and 27 when they were conveyed to the LLCs, along the existing road[5] which leads from Parcel 19 to Shootin' Iron County Road. Our conclusion that the parties to the conveyance intended to reserve an easement benefitting Parcel 19, rests on the unique circumstances presented here. Considering the deed language and the surrounding circumstances, including the relationship of the parties to the current litigation and the shared knowledge of those parties, our finding of a valid, reserved easement is warranted in this case.

## III. *Is the easement appurtenant to the land or in gross?*

[¶34] Although not raised by the parties, we next determine whether the easement reserved was appurtenant, and thus, was transferred to subsequent owners of Parcel 19; or in gross, in which case it terminated when Parcel 19 was conveyed from the Trust to Elizabeth Lockhart.

> "'An easement is appurtenant to the land when the easement is created to benefit and does benefit the possessor of the land in his use of the land.'" *Weber v. Johnston Fuel Liners, Inc.*, 519 P.2d 972, 975 (Wyo. 1974) (quoting *Restatement of Property* § 453 at 2914 (1944)). In contrast, "'[a]n easement is in gross when it is not created to benefit or when it does not benefit the possessor of any tract of land in his use of it as such possessor. *Id.* (quoting *Restatement of Property, supra*, § 454, at 2917). An easement will not be presumed to be in gross when it can fairly be construed to be appurtenant. *Id.*

*Hasvold*, 2002 WY 65, ¶ 14, 45 P.3d at 638 (quoting *R.C.R., Inc.*, 978 P.2d at 586).

---

[5] The parties have discussed at some length the significance of the use of the term "roads" instead of "road." We do not find ambiguity in the plural use of that word, given the parties' agreement that there is only one route from Parcel 19 to Shootin' Iron Road.

[¶35] In *Pokorny v. Salas*, 2003 WY 159, 81 P.3d 171 (Wyo. 2003), we addressed the question whether an easement reserved by the original landowner over property that the landowner conveyed was appurtenant or in gross. *Id.* at ¶ 21, at 177. In finding that the easement was appurtenant, we determined that the easement language was "clear and unambiguous." *Id.* at ¶ 23, at 178. However, we did not "arrive at that conclusion in a vacuum." *Id.* In looking to the surrounding circumstances at the time the easement was reserved, we found that without an easement there would be no access to parcels of property, which were sold off by the original owners. *Id.* at ¶ 24, at 178. As a result, we found that "the four corners of the document in the context in which it was drafted compels the conclusion that the grantor of the easement intended it to be appurtenant." *Id.* The same conclusion is compelled here. The Trust's intent to subdivide the property would have been impeded without a valid easement to access Parcel 19.[6]

[¶36] The Trust divided the Ranch in order to preserve the possibility of developing those parcels in the future. However, until an additional easement was secured by the Lockharts in 2004, there was no access to Parcel 19 without the easement through Parcels 20, 24, and 27. The Oliver easement was strictly limited to accessing those residences that existed at the time that easement was conveyed in 1986. Without an easement appurtenant to the land, Parcel 19 would have no value for development as a subsequent purchaser would be unable to access his or her residence. *See* Bruce & Ely, Jr., *supra* 13, at § 2:3, at 2-7 − 2-8 ("The fact that an easement adds to the enjoyment of another parcel or is of no value unless used in connection with particular land tends to demonstrate appurtenance."). Therefore, we conclude the parties intended for the 1992 reserved easement to be appurtenant rather than in gross. As a result, the subsequent owners of the property, including the Lockharts, possess a non-exclusive right to access Parcel 19 by way of the road leading from Parcel 19 through Parcels 20, 24, and 27.

[¶37] The existing road leading from Parcel 19 to Shootin' Iron County Road 22-20 also crosses Parcel 25, which the Trust retained in 1992. We now determine whether the Trust conveyed the remainder of the easement, through Parcel 25, when it conveyed Parcel 19 to Elizabeth Lockhart in 1998.

---

[6] Most of the "badges of appurtenance" are also met here. *See Pokorny*:

> (1) the easement was created to benefit a specific tract of land; (2) the grant was for a perpetual right-of-way for ingress and egress; (3) the grantee has the right to inspect and maintain the easement; (4) the right is not limited to the possessor personally; (5) the grant expressly extends the right to the grantees, their heirs, executors, administrators, successors, assigns and legal representatives; and (6) the easement document does not contain any limitations on the transferability of the easement to future transfers of both the dominant and servient estates.

2003 WY 159, ¶ 25, 81 P.3d at 178 (citing *Hasvold*, 2002 WY 65, ¶ 21, 45 P.3d at 640).

13

## IV. Did the grantor convey an easement across Parcel 25 when it conveyed Parcel 19 to Elizabeth Lockhart in 1998?

[¶38]  The Trust retained Parcels 19 and 25 until 1998, when it conveyed Parcel 19 to Elizabeth Lockhart.  Prior to 1998, there was no easement through Parcel 25 benefitting Parcel 19 because there was unity of ownership in these two parcels.  *See* Bruce & Ely, Jr., *supra* ¶ 13, at § 3:11, at 3-35 ("An easement is by definition a nonpossessory interest in land of another.  Thus, it is axiomatic that a landowner cannot obtain an easement in the landowner's own property.").

> The 1998 easement language mirrored that of the 1992 conveyances:

> > Together with and subject to all easements of record and sight, and a non-exclusive 60.0 foot road and utility easement through parts of Sections 12, 13, and 24 in a location to be determined but to generally follow the existing roads to Shootin' Iron County Road 22-20.

Although the easement language is nearly identical, with respect to the 1998 conveyance we determine whether the Trust conveyed an easement, in contrast to the 1992 conveyances, in which the Trust reserved an easement.  Our analysis therefore focuses on the words "together with" rather than "subject to."

> > The words "together with," . . . are words of common usage, and we give them their ordinary meaning.  "Together with" means "along with : in addition to : as well as <the big island, *together with* its smaller neighbors> <these sums *together with* the previous balance> <arrested, *together with* a companion>."

*Kerry v. Quicehuatl*, 162 P.3d 1033, 1036 (Or. Ct. App. 2007) (quoting *Webster's Third New International Dictionary* 2404 (unabridged ed. 2002) (italics in original)).  In utilizing the terms "together with," the grantor Trust conveyed to Elizabeth Lockhart Parcel 19 as well as a "non-exclusive 60.0 foot road and utility easement" as described.  The deed language expressly conveys an easement to Elizabeth Lockhart traversing Parcel 25.  (We have already analyzed identical language and its compliance with the specificity requirements of Wyo. Stat. Ann. § 34-1-141 in our discussion of the 1992 conveyances and the same analysis applies here.  Our analysis of appurtenance in our discussion of the 1992 conveyances also applies to the 1998 conveyance.)

14

[¶39] The owners of Parcel 19 enjoy ingress and egress access along the easement leading from Parcel 19 to the Shootin' Iron County Road 22-20.

## CONCLUSION

[¶40] We reverse the district court's grant of summary judgment in favor of the Gills and remand with instructions that the district court enter summary judgment in favor of the Lockharts.

